**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: )<br>)<br>MONEY CENTERS OF AMERICA, INC., )<br>)<br>Debtor. )<br>_____ )<br>)<br>CASINO CARIBBEAN, LLC, )<br>MACAU CASINO, LLC, )<br>MACAU SOUTHCENTER, LLC, and )<br>YAKIMA CARDROOM, LLC, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MONEY CENTERS OF AMERICA, INC. )<br>and CHECK HOLDINGS, LLC, )<br>)<br>Defendants. )<br>_____ ) | Chapter 11<br>Case No. 14-10603-CSS<br>(Consolidated)<br><br><br><br><br><br><br><br><br><br><br>Adv. Pro. No. |

**ADVERSARY COMPLAINT TO (I) DECLARE THAT DEBT OWED TO PLAINTIFFS IS NOT PROPERTY OF THE ESTATE, OR (II) DECLARE THAT DEBT IS NON-DISCHARGEABLE, AND (III) TO DECLARE THAT DEBT IS NO NOT SUBJECT TO THE AUTOMATIC STAY, OR, IN THE ALTERNATIVE, TO LIFT THE AUTOMATIC STAY**

**JURISDICTION**

1.  This is an adversary proceeding brought pursuant to Federal Rules of

Bankruptcy Procedure 4007 and 7001.

2. This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. This adversary proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1409.

## PARTIES

5. On March 21, 2014, Money Centers of America, Inc. ("MCA") filed its Chapter 11 voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Delaware, Case No. 14-10603-CSS.

6. On May 3, 2014, defendant Check Holdings, LLC ("Check Holdings" filed its Chapter 11 voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Delaware, Case No. 14-11304-CSS.  On May 30, 2014, the Court directed that Case No. 14-11304-CSS be jointly administered with Case No. 14-10603-CSS.

7. Plaintiffs Casino Caribbean LLC, Macau Casino, LLC, Macau Southcenter, LLC and Yakima Cardroom, LLC (collectively, "Plainytiffs") are limited liability companies duly organized and existing under the laws of the State of Washington.

## FACTUAL BACKGROUND

8. Plaintiffs operate casinos located in the State of Washington.

9. On March 31, 2012, Plaintiffs each separately entered into a Cash Access Agreement ("CAA") with Check Holdings (doing business as Landmark), the substantive terms of which are identical. Under the CAA, Check Holdings provided equipment to Plaintiffs through which they could process credit card cash advances to customers, with a service charge paid by the customer split between Plaintiffs and Check Holdings. Under this system, Plaintiffs' customers would submit their credit cards to Casino, and request cash. Plaintiffs would run the credit cards through the equipment provided by Check Holdings. If the transaction was approved by the credit card issuer, Plaintiffs would advance cash to the customers. Check Holding would obtain the cash from the credit card issuer and forward to Plaintiffs by direct deposit the full amount advanced.

10. On or about June 4, 2012, MCA announced publicly that it has acquired the assets of Landmark.

11. Beginning in March, 2013, Plaintiffs began to experience delays in payment under the CCA. Whereas previously Plaintiffs would receive payment of advanced funds within three days, in March 2013 it took seven days for Plaintiffs to receive reimbursement. By September, 2013, it took thirteen days for Plaintiffs to

receive reimbursement.  By the end of 2013, it took twenty-one days for Plaintiffs to receive reimbursement.

12. On March 11, 2014, a representative of Plaintiffs complained about the excessive delays to a representative of Check Holding.  Plaintiffs were told that reimbursement should not take longer than four days, and that Check Holding would investigate and get back to them.

13. On March 19, 2014, Check Holding advised Plaintiffs that the delay had resulted from a "glitch with the bank ACH module," and that reimbursements would be caught up by March 24, 2014.

14. On April 5, 2014, still experiencing excessive delays, Plaintiffs threatened to terminate the CCA if the issue was not resolved by April 11.

15. On April 8, 2014, Check Holdings reimbursed funds for nine overdue days.  On April 11, Check Holdings assured Plaintiffs that all accounts would be made current by April 16.  That promise was not fulfilled.

16. As of the time of filing of this Complaint, Check Holdings has withheld funds belonging to Plaintiffs in the amount of $860,722.10.

## COUNT I
(Declaration that funds are not property of the Estate)

17. Plaintiffs restate and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

18. Property merely passing through the debtor is not property of the estate, that the Debtor never acquires either bare legal or equitable title, but simply a possessory interest.

19. Under the CCA, Check Holdings had no right, legal or equitable, to the funds beyond its portion of the service fee. The balance of the funds belong to and are the property of Plaintiffs. As such, those funds are not property of the bankruptcy estate, and should be distributed to Plaintiffs.

## COUNT II
(Alternatively, Declaration of Non-Dischargeability Pursuant to 11 U.S.C. §523(a)(4))

20. Plaintiffs restate and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

21. Pursuant to Section 523(a)(4) of Title 11 of the U.S. Code, a debt is not dischargeable if it is the result of embezzlement.

22. Check Holding embezzled funds that are the property of Plaintiffs in accordance with the CCA. The funds lawfully came into Check Holding' possession,

but Check Holdings then converted them to its own use in a manner inconsistent with Plaintiffs' property rights and without authorization, and with intent to deny Plaintiffs the funds.

23. Consequently, Check Holdings has embezzled funds that belong to Plaintiffs, and such debt is not subject to discharge.

### COUNT III
(Declaration that Automatic Stay Does Not Apply)

24. Plaintiffs restate and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

25. To the extent that the funds described above are not property of the estate, the automatic stay provisions of 11 U.S.C. §362 do not apply to an action to recover those funds.

### COUNT IV
(Alternatively, to Lift Automatic Stay)

26. Plaintiffs restate and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

27. To the extent that the automatic stay applies, it should be lifted. The assets at issue either are not property of the estate, and so may not be used to satisfy debts of the estate, or are nondischargeable, and so should not be impaired by further delay.

WHEREFORE, plaintiffs respectfully request that the Court enter judgment in their favor:

1.    Declaring that funds owed by debtor-defendants to plaintiffs are not property of the debtors' bankruptcy estates; or

2.    Declaring that the debt owed by debtor-defendants to plaintiffs are non-dischargeable; and either

3.    The automatic stay provisions of 11 U.S.C. §362 do not apply, or

4.    The automatic stay is lifted to permit plaintiffs to seek recovery from the debtor defendants;

5.    Plaintiffs are awarded their costs, including reasonable attorney's fees, and such other and further relief as the Court deems just.

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th floor
Wilmington, DE 19801-1186
(302) 573-2525
Attorney for Plaintiffs

Dated: July 7, 2014