# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MONEY CENTERS OF AMERICA, INC., | ) | Case No. 14-10603-CSS |
| | ) | (Consolidated) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CASINO CARIBBEAN, LLC, | ) | |
| MACAU CASINO, LLC, | ) | |
| MACAU SOUTHCENTER, LLC, and | ) | |
| YAKIMA CARDROOM, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 14-50437-CSS |
| | ) | |
| MONEY CENTERS OF AMERICA, INC. | ) | |
| and CHECK HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE MOTION
TO INTERVENE OF THE QUAPAW CASINO AUTHORITY**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th floor
Wilmington, DE  19801-1186
(302) 573-2525
Attorney for Plaintiffs

Dated: February 4, 2015

## **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS AND BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   QCA IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT. 3

    A.   QCA DOES NOT HAVE A STATUTORY RIGHT TO INTERVENE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   QCA DOES NOT HAVE A SIGNIFICANTLY PROTECTABLE INTEREST IN PLAINTIFFS' FUNDS. . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   DENIAL OF THE MOTION TO INTERVENE WILL NOT IMPAIR QCA'S ABILITY TO PROTECT ITS RIGHTS. . . . . . . . . . . . . . . . 8

II.  PERMISSIVE INTERVENTION IS NOT WARRANTED.. . . . . . . . . . . . 8

III. THE MOTION TO INTERVENE IS UNTIMELY AND PREJUDICIAL. 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Cases**

*Amador County, Cal. v. U.S. Dept. of the Interior*, 772 F.3d 901 (D.C. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227 (1st Cir. 1992). . . . 10

*Bell Atlantic-Delaware, Inc. v. Global NAPS South, Inc.*, 77 F.Supp.2d 492 (D. Del. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bisanz Bros., Inc. v. Chicago-Milwaukee-St. Paul & Pac. R. Co.*, 20 F.R.D. 353  (D. Minn. 1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims,* 323 F.3d 228 (3rd Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hallco Mfg. Co., Inc. v. Quaeck*, 161 F.R.D. 98 (D. Or. 1995). . . . . . . . . . . . . . 8

*In re Charter Co.*, 50 B.R. 57 (Bankr. W.D. Tex. 1985). . . . . . . . . . . . . . . . . . . 11

*In re Cogar*, 201 B.R. 803 (9th Cir. B.A.P. 1997). . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3rd Cir. 2004). . . . . . . . . . . . 11

*In re Coram Resource Network, Inc.*, 305 B.R. 386 (Bankr. D. Del. 2004).. . . . . . 3

*In re Golden Triangle Capital, Inc.*, 171 B.R. 79 (9th Cir. BAP  1994). . . . . . . . . 4

*In re Ionosphere Clubs, Inc.*, 101 B.R. 844 (Bankr. S.D.N.Y. 1989).. . . . . . . . . . . 5

*In re Lone Star Pub Operations, LLC*, 465 B.R. 212 (Bankr. D. Kan. 2012). . . . 4

*In re Odle*, 204 B.R. 714 (Bankr. C.D. Ill. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3rd Cir. 2005). . . . . . . . . . . 6

*Mountain Top Condominium Ass'n v. Dave Stabbar Master Builder, Inc.*, 72 F.3d 361 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*SEC v. Everest Management Corp.*, 475 F.2d 1236 (2d Cir. 1972). . . . . . . . . . . . . 8

*Shea v. Angulo,* 19 F.3d 343 (7th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174 (3rd Cir. 1994). . . . . . . . . . . . . . . . . 10

**Other authorities**

11 U.S.C. §101(10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. §101(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. §1109(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 24(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 24(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# NATURE AND STAGE OF THE PROCEEDINGS AND BACKGROUND FACTS

Debtor Money Centers of America filed a voluntary petition for relief in this Court on March 21, 2014. Debtor Check Holdings, LLC filed a voluntary petition for relief on May 23, 2014. The two matters were administratively consolidated on May 30, 2014.

On October 31, 2014, Movant The Quapaw Casino Authority of the Quapaw Tribe of Oklahoma (O-Gah-Pah) ("QCA") filed proofs of claim in the bankruptcy action. (Motion of the Quapaw Casino Authority to Intervene as an Additional Adversary Plaintiff ("Motion"), Ex. A to Ex. A).[1]

Over seven months later, on May 30, 2014, QCA filed an entry of appearance and request for service in the main bankruptcy action. (D.I. 120).

Plaintiffs Casino Caribbean, LLC, Macau Casino, LLC, Macau Southcenter, LLC and Yakima Cardroom, LLC filed their adversary complaint on July 7, 2014, seeking recovery of $860,772.10 (plus interest). (D.I. 176). Debtors filed a motion to dismiss the action on Sept. 9, 2014. The Court issued an Order on January 29, 2015, granting the motion in part and denying it in part.

---

[1] In those proofs of claim, QCA's representative signed statements under penalty of perjury that QCA is a creditor of Debtors, while adding statements reserving the right to argue that QCA is not a creditor of Debtors (and so reserving the right to directly contradict its sworn statements).

1

On November 20, 2014, various professionals representing Debtors filed applications for compensation in amounts exceeding $1 million. (D.I. 229-231). As Debtors' Operating Reports for October and November showed that there was only approximately $2.4 million in cash, Plaintiffs contacted the Chapter 11 Trustee to seek protection of money to satisfy a judgment so as to avoid having to file an objection to the applications.

The parties agreed to insert language into the Omnibus Order Granting Interim Allowance of Compensation for Services Rendered and For Reimbursement of Expenses for the First Interim Period. That language provides that the Chapter 11 Trustee will give 10-days' advance notice to counsel for Plaintiffs in this action prior to making any disbursement, including compensation to professionals, that will cause the cash held by the estates to fall below $900,000, and that if Plaintiffs file a motion for relief within that period after such notice, no funds will disbursed until the Court decides such motion. The Court entered that Order on December 10, 2014. (D.I. 241).

During the over sixteen-month period since QCA filed its proofs of claim, it took no action to protect its interest. It did not file an adversary action. It did not seek to prevent against depletion or disbursement of funds from the estate. Now, over seven months after it first appeared in the bankruptcy action, it seeks, by intervention, to butt to the head of the line.

2

# ARGUMENT

## I. QCA IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

The burden is on QCA to establish a right to intervene. *In re Coram Resource Network, Inc.*, 305 B.R. 386, 388 (Bankr. D. Del. 2004). As demonstrated below, it cannot do so.

### A. QCA DOES NOT HAVE A STATUTORY RIGHT TO INTERVENE.

To establish a right to intervene by federal statute under Fed. R. Civ. P. 24(a)(1), QCA relies on 11 U.S.C. §1109(b), which provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

To invoke this statute, QCA states in its opening brief that "QCA is a creditor ...." (QCA Op. Brf. at 5). However, in its motion, QCA states that "[a] debtor-creditor relationship did not exist" between QCA and Debtors because Check Holdings was a mere conduit with no ownership in the funds and the funds are not property of the bankruptcy estate. (Motion ¶5). This is consistent with the claim asserted in QCA's proposed Complaint. (Motion Ex. A ¶¶17-22).

A "creditor" is defined as one that has a "claim" against the debtor or the estate, 11 U.S.C. §101(10). A "claim is defined by 11 U.S.C. §101(5). However, for there to be a "claim", it must be against assets owned by the bankruptcy estate. *See, e.g., In re Cogar*, 201 B.R. 803, 810 (9th Cir. B.A.P. 1997) ("the fact that Debtor did not own the property would preclude a 'claim'" under Section 101(5)); *In re Odle*, 204 B.R. 714, 716 (Bankr. C.D. Ill. 1997) (as money never became part of the estate, it cannot be the subject of a "claim" under Section 101(5)). *See also In re Lone Star Pub Operations, LLC*, 465 B.R. 212, 217 (Bankr. D. Kan. 2012) (where debtor was a mere conduit, it did not have a debtor-creditor relationship with the true owner of the funds); *In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 83 (9th Cir. BAP 1994) (same).

QCA's proposed adversary complaint is based on the premise that Debtors were mere conduits and the money it seeks to recover does not constitute property of the estate. (QCA Op. Brf. at 6). QCA, therefore, does not have a "claim" in the bankruptcy proceeding as to those funds and is not, therefore a "creditor" entitled to intervene under Section 1109(b).

Beyond this, as QCA's lawsuit seeks money outside of the bankruptcy estate, and so is not affected by the bankruptcy proceeding, QCA is not a "party in interest":

> Although § 1109(b) ought to be construed broadly, if a party is not affected by the reorganization process it should not be considered a party in interest. Only those parties sufficiently affected by a Chapter 11 proceeding should be able to appear before it and be heard. The bankruptcy court must determine a party's status on a case by case basis to see if this party has a sufficient stake in the proceeding which would require representation. When interpreting the meaning of the Code, bankruptcy courts are governed by its purposes. Bankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute. As a result, one purpose of the Code is to convert the bankrupt's estate into cash and distribute it among creditors. The term party in interest should be interpreted in light of this purpose. Consequently the party requesting standing must either be a creditor of a debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate.

*In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (citations omitted). As QCA is not claiming "creditor" status in this proceeding (and cannot, as it would be fundamentally inconsistent with Plaintiffs' position) and is not seeking equitable relief against any property of the estate, QCA may not invoke Section 1109(b) as a basis for intervention.

### B.  QCA DOES NOT HAVE A SIGNIFICANTLY PROTECTABLE INTEREST IN PLAINTIFFS' FUNDS.

To establish an interest in this action, QCA relies on *Mountain Top Condominium Ass'n v. Dave Stabbar Master Builder, Inc.*, 72 F.3d 361 (3rd Cir. 1995), for the proposition that "an intervenor's interest in a specific fund is sufficient

5

to entitle intervention in a case affecting that fund." (QCA Op. Brf. at 6, quoting *Mountain Top Condominium Ass'n*, 72 F.3d at 366).

QCA, however, ignores a subsequent opinion of the Third Circuit, *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3rd Cir. 2005). In that opinion, the Third Circuit reiterated that:

> In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene....While a mere economic interest may be insufficient to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund. Thus, when a particular fund is at issue, an applicant claims an interest in the very property that is the subject matter of the suit.

*Id.* at 221 (quoting *Mountain Top*, 72 F.3d at 366). The Court, however, went on to distinguish *Mountain Top* on its facts, stating that "*Mountain Top* concerned the disbursement of insurance proceeds that the insurance carrier had already paid to a condominium association to compensate for a loss caused by a hurricane." *Id.* at 221. The Court held that, in *Liberty Mut. Ins. Co.,* by contrast:

> Appellants here have no property interest in the Liberty Mutual UEL policies nor do they have any other legally protectable interest in the policies. Rather, they have the kind of economic interest in the insurance proceeds that we have held does not support intervention as a matter of right. *See Mountain Top*, 72 F.3d at 366 ("a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene."). The proceeds of the policies are not being held in an

6

escrow account that they have a legal interest in as was the case in Mountain Top.

*Id.* at 222.

In the present action, the fact that the money is being held by debtors in bankruptcy does not result in the money being part of a "specific fund," any more than money held generally by any person or entity is a "specific fund" because it is held by that "specific" person or entity. There is no allegation that the money was set aside in a discrete fund. QCA cannot identify a "specific fund" in which it has an interest (especially since plaintiffs have equitable ownership of monies that debtors were supposed to deliver to them, and QCA cannot claim similar ownership of the same monies).

QCA makes clear its motive when it notes that the fees of counsel and advisors to the debtors exceed the estate's bank balances, and that

> It is urgent that QCA assert its claim now to avoid distribution of professional fees which will be difficult, if not impossible, to recover, if those fees are paid out of the estate's bank balances and if it is later determined, as QCA asserts, that its portion of those funds are not property of the estate.

(QCA Op. Brf. at 11). This statement shows that QCA is pursuing a purely economic interest – ensuring that there are sufficient funds to satisfy its interest. That does not justify intervention as of right.

7

### C. DENIAL OF THE MOTION TO INTERVENE WILL NOT IMPAIR QCA'S ABILITY TO PROTECT ITS RIGHTS.

As QVC is free to institute its own adversary action to recover amounts owed to it, there is no prejudice to QVC's ability to protect its rights, and so mandatory intervention is not justified. *See Shea v. Angulo,* 19 F.3d 343, 347 (7th Cir.1994) (party's interests were not impaired where he had the ability to initiate his own suit against the defendant in order to recover his share of alleged partnership earnings); *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972).[2]

## II. PERMISSIVE INTERVENTION IS NOT WARRANTED.

The decision to permit or deny intervention under Fed. R. Civ. P. 24(b) is within the discretion of the Court. *Bell Atlantic-Delaware, Inc. v. Global NAPS South, Inc.*, 77 F.Supp.2d 492, 502 (D. Del. 1999).

"Where proposed intervenors would present no new questions to the court, a motion for permissive intervention is properly denied." *Hallco Mfg. Co., Inc. v. Quaeck*, 161 F.R.D. 98, 103 (D. Or. 1995). *See also Bisanz Bros., Inc. v. Chicago-Milwaukee-St. Paul & Pac. R. Co.*, 20 F.R.D. 353, 354-55 (D. Minn. 1957)

---

[2] The fact that there may not be sufficient funds to collect directly from debtors would not be due to any denial of intervention, but rather QCA's own delay in bringing an adversary action.

(motion to intervene denied where proposed intervenor offers no new issues, and can file an amicus brief).  Such is the case here.

Equally, if not more, importantly, in determining whether or not to exercise its discretion, the Court should consider the prejudice to the existing parties.  Fed. R. Civ. P. 24(b).

As a result of the award of compensation to professionals, Debtors' estates are likely not going to be sufficient to satisfy judgments to both Plaintiffs and QCA (unless the professionals are required to disgorge funds disbursed to them or Debtors bring preference and other types of adversary actions and recover on them).  As noted above, Plaintiffs took action to preserve sufficient funds to satisfy a judgment in their favor.  QCA, with full knowledge of the bankruptcy proceeding, and the applications for compensation, sat by idly.

Now, instead of filing its own adversary action to recover what it can of its own claims, QCA seeks intervention so it can free-ride on Plaintiffs' efforts and compete with Plaintiffs for the same limited pool of funds, and not have to file actions for disgorgement from professionals as a result of being second in line.  QCA's motion is merely for personal advantage, to the prejudice of Plaintiffs. Tactical maneuvering is not a proper basis for intervention.

## III. THE MOTION TO INTERVENE IS UNTIMELY AND PREJUDICIAL.

"There is no bright-line rule delineating when a motion to intervene is or is not timeous. Instead, courts must decide the question on a case by case basis, examining the totality of the relevant circumstances." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992).

Timeliness is not just a function of counting days. It is determined by the totality of the circumstances. Although the point to which the litigation has progressed is one factor to consider, it is not dispositive. *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1182 (3rd Cir. 1994). Timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case. *Amador County, Cal. v. U.S. Dept. of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014).

QCA claims that its motion is timely because the case is still in the preliminary stages. (Op. Brf. at 9). This, however, ignores the actions taken in the bankruptcy described above, and their effect on the ability to recover from Debtors. QCA sat on its rights for fifteen months while Plaintiffs took action to preserve funds for their

potential recovery. QCA's knowing failure to seek similar protection under the circumstances should render its motion untimely.

Indeed, to insure that QCA's motion is not merely a tactical maneuver to the prejudice of Plaintiffs, if the Court is considering granting QCA's motion, it should condition any intervention on QCA subordinating its right to recover to Plaintiffs, giving Plaintiffs the right to satisfy their judgment completely before QCA may do so from any remaining funds.

A court may impose conditions on intervention. *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 963 (6th Cir. 2009) (intervention as of right); *In re Charter Co.*, 50 B.R. 57, 64 (Bankr. W.D. Tex. 1985) (permissive intervention). The Court may exercise its equitable powers to achieve fairness and justice. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 235 (3rd Cir. 2004). *See also Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims,* 323 F.3d 228, 233 (3rd Cir. 2003) ("[i]n the exercise of its powers as a court of equity, the bankruptcy court may subordinate claims for cause, applying traditional principles of equitable subordination"). This would be the only way to avoid prejudice to Plaintiffs which would result from QCA's intervention.

## CONCLUSION

WHEREFORE, for the foregoing reasons, plaintiffs respectfully request that the Court deny the Motion to Intervene.

                Respectfully submitted,

                /s/ David L. Finger
                David L. Finger (DE Bar ID #2556)
                Finger & Slanina, LLC
                One Commerce Center
                1201 N. Orange St., 7th floor
                Wilmington, DE 19801-1186
                (302) 573-2525
                Attorney for Plaintiffs

Dated: February 4, 2015

## **CERTIFICATE OF SERVICE**

I, David L. Finger, hereby certify that on this 4th day of February, 2015, I caused a copy of the foregoing document to be served via first class mail, postage prepaid, on the below-listed counsel of record:

Norman L. Pernick, Esq.
Patrick J. Reilley, Esq.
Therese Scheuer, Esq.
Cole Schotz, P.C.
500 Delaware Ave., Ste. 1410
Wilmington, DE 19810

Ricardo Palacio, Esq.
Benjamin W. Keenan, Esq.
Ashby & Geddes, P.A.
P.O. Box 1150
Wilmington, DE 19899

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th floor
Wilmington, DE  19801-1186
(302) 573-2525
Attorney for Plaintiffs