# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MONEY CENTER OF AMERICA, INC., et al., | : | Case No. 14-10603(CSS) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| CASINO CARIBBEAN, LLC, MACAU CASINO, LLC, MACAU SOUTHCENTER, LLC, and Yakima CARDROOM, LLC, | : : : : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Adv. Proc. Case No.: 14-50437 |
| | : | |
| MONEY CENTERS OF AMERICA, INC.: CHECK HOLDINGS, LLC, | : : | |
| | : | |
| Defendants. | : | |

## OPINION[1]

**ASHBY & GEDDES, P.A.**
Ricardo Palacio
Benjamin W. Keenan
500 Delaware Avenue
Wilmington, DE 19899
    -and-
Daniel E. Gomez
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, OK 74172-0148
Counsel for the Quapaw Casino
Authority of the Quapaw Tribe of Oklahoma

**FINGER & SLANINA, LLC**
David L. Finger
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801-1186
Counsel for Plaintiffs

Dated: January 28, 2016
Sontchi, J. _____

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12…" Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Introduction

The Plaintiffs in this action commenced an adversary proceeding against the Debtors, claiming that one of the Debtors, pursuant to a contractual relationship, held funds owned by them as a mere conduit. The Plaintiffs seek a ruling by the Court that these funds are not property of the estate, and therefore the automatic stay should be lifted and the Debtors should be required to remit them to the Plaintiffs. Because the Debtors' Operating Reports showed a risk that the cash burn associated with paying professionals may leave the Debtors with insufficient cash to pay the Plaintiffs, the Plaintiffs requested, and were granted subject to certain conditions, a order to ensure the Debtors' cash balance did not dip below $900,000.

Quapaw Casino ("QCA"), like the Plaintiffs, is a casino operator who had a contract pre-petition with one of the Debtors. QCA, like the Plaintiffs, believes that the Debtors hold funds, owned by QCA, as a mere conduit under their pre-petition contract. QCA requests the same relief as the Plaintiffs. QCA was not involved with the order that set aside funds to pay the Plaintiffs' claims. Nonetheless, QCA now seeks intervention in the adversary proceeding, claiming intervention as a matter of right under Fed. R. Civ. P. 24(a)(1) and (a)(2), and permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). The Plaintiffs, fearing that the set-aside funds will be insufficient to pay both their claims and QCA's claims, oppose intervention. The Court holds that QCA has a right to intervene under both Fed. R. Civ. P. 24(a)(1) and (a)(2), and that permissive intervention is warranted under Fed. R. Civ. P. 24(b)(1)(B).

The Third Circuit has held that § 1109(b) of the Code creates a statutory right of intervention under Rule 24(a)(1). The Court holds that QCA qualifies as a creditor under § 1109(b) because QCA has filed a claim against the estate, the Debtors have acknowledged that claim in their schedules and the Court has yet to decide the merits of QCA's claim. Thus, QCA has a right to intervene under Rule 24(a)(1).

2

Rule 24(a)(2) is understood to have four requirements before a right to intervention can be claimed.  QCA has presented all four requirements.  The Plaintiffs, in opposing QCA, have focused on the fact that allowing QCA to intervene now can (1) prejudice the Plaintiffs by reducing their recoveries and (2) allows QCA to free-ride on the Plaintiffs' efforts to ensure sufficient funds were set aside to pay their claims.  Although the Court acknowledges that this theoretically prejudices the Plaintiffs, this type of prejudice is irrelevant to intervention as a matter of right under Rule 24(a)(2), which only requires that intervention be timely.  The Court therefore finds that QCA must be allowed to intervene under Rule 24(a)(2).

Finally, the Court finds that permissive intervention is warranted under Rule 24(b)(1)(B).  QCA clearly presents questions of law and fact similar to the Plaintiffs and therefore judicial economy and consistency are served by adjudicating all claims in a single proceeding.  Because QCA's interest is not represented by the Plaintiffs, QCA's intervention is not redundant or wasteful.  The Court therefore finds it proper to allow intervention.

## Factual And Procedural Background

Quapaw Casino Authority of the Quapaw Tribe of Oklahoma (the "QCA")  d/b/a Quapaw Casino ("Casino") owns and operates the Casino in Miami, Oklahoma.  On or about January 16, 2014, QCA entered into a Financial Services Agreement (the "Agreement") with the Debtor-Defendant, Check Holdings, LLC ("Check Holdings") that required Check Holdings to provide automated teller machines ("ATM") and other cash advance transaction services to the Casino.  The Agreement provided that if a patron of the Casino used a credit/debit card at a Casino ATM or presented checks to the Casino's cash vault, Check Holdings would reimburse the Casino for the funds it advanced to the patron.  Check Holdings was entitled to retain fees for its services.

On May 15, 2014, the Casino terminated the Agreement with Check Holdings when Check Holdings failed to reimburse funds the Casino advanced between April 24, 2014 and May 14, 2014, notwithstanding the pledges it made in the Agreement. Check Holdings filed for bankruptcy on May 23, 2014, two days after Money Centers of America, Inc. filed its Chapter 11 petition (collectively, "Debtors"). Money Centers of America is the sole owner of Check Holdings. Their cases were administratively consolidated on May 30, 2014. QCA is listed in Check Holding's schedules; and it filed a proof of claim for $502,018.00 and expressly reserved its right to challenge that the funds were property of Debtors' estate:

> **"Reservation of Rights.** By submitting this Proof of Claim, the [Quapaw] Casino does not waive any argument that Check Holdings was merely a conduit for the pass through of funds advanced by the Casino and that the advanced funds were never property of Check Holdings. The Casino expressly reserves the right to assert that the amount it advanced is not property of Check Holdings' bankruptcy estate and/or that the Casino has a preferential right to payment over and above the other creditors and/or that the amount is otherwise no dischargeable."

Casino Caribbean, LLC, Macau Casino, LLC, Macau Southcenter, LLC, and Yakima Cardroom (collectively, "Plaintiffs") filed an adversary complaint (the "Complaint") against Debtors on July 7, 2014, to seek recovery of $860,772.10, plus interest. The Debtors filed a motion to dismiss on September 9, 2014, which was granted and denied in part.

On November 20, 2014, various professionals representing Debtors filed applications for compensation in amounts exceeding $1 million. Debtors operating report for October and November showed approximately $2.4 million in cash, so Plaintiffs contacted the Chapter 11 Trustee (the "Trustee'") to ensure that the Debtors retained enough cash to fully satisfy the Plaintiffs' claims. As a result, the December 10, 2014 Omnibus Order (the "Omnibus Order") contained a requirement that the Trustee give 10-days notice to Plaintiffs' counsel of any disbursements that will cause the estate's

cash balance to fall below $900,000. The Omnibus Order further provides that Plaintiffs must file a motion for relief within the 10-day notice period in order to prevent disbursement.

QCA filed a Motion of the Quapaw Casino Authority to Intervene as an Additional Adversary Plaintiff (the "Motion to Intervene") on January 21, 2015. That same day, QCA also filed An Opening Brief of the Quapaw Casino Authority In Support of its Motion to Intervene (the "Brief"). This was the first time QCA had filed an adversary action in the Debtors case. On February 4, 2015, Plaintiffs filed their Answering Brief in Opposition to the Motion to Intervene of the Quapaw Casino Authority (the "Opposition Brief"). On February 11, 2015, QCA's Reply Brief in Support of its Motion to Intervene (the "Reply") was filed thereto.

QCA claims that its intervention in the Plaintiffs' adversary proceeding is proper under Fed. R. Civ. P. 24(a) and (b). QCA first asserts a right to intervene under Rule 24(a)(1), arguing that because QCA is a creditor and party in interest, the Third Circuit's interpretation of 11 U.S.C. § 1109(b) gives it a federal statutory right of intervention. QCA contends that even though it is asserting that the funds it claims are not property of Debtors' estate, it still still qualifies as a creditor under § 1109(b) because the Debtors' schedules list its claim as a liability of the estate. In support of this interpretation, QCA notes that it has the burden of proving that the claimed funds are not property of the estate; if it is unsuccessful, it will be treated as a creditor in Debtors' bankruptcy case.

Additionally, QCA claims a right to intervene under Rule 24(a)(2). First, QCA asserts that the funds it claims are the same funds claimed by the Plaintiffs. Second, QCA believes that the Plaintiffs' success on the merits could affect QCA's ability to assert its rights and deplete the fund sufficiently to impair QCA's interest. Finally, QCA believes the Plaintiffs cannot adequately protect QCA's rights because Plaintiffs have only requested that the amount of their claims be excluded from the estate. Thus,

QCA concludes it has a right to intervene because additional funds would have to be excluded in order for its interest to be adequately represented.

Furthermore, QCA claims that the Motion to Intervene is timely and creates no prejudice to the existing parties because Plaintiffs' adversary proceeding is in its preliminary stages and Debtors have not filed an answer to the Complaint; therefore, any delay will be minimal. QCA further asserts that the six month delay between the Plaintiffs' filing of the Complaint and its filing of the Motion to Intervene is inconsequential because QCA's proof of claim was not filed until three months after the Complaint and the risk to its rights only developed one month later when professional expenses and the Debtors' operating report were brought before this Court.

Alternatively, QCA believes that permissive intervention is appropriate under Rule 24(b) because the facts and law at issue in Plaintiffs' adversary proceeding are identical to the facts and law alleged in QCA's complaint. QCA claims that Plaintiffs and it have similar contractual agreements with Check Holding and claim the same legal theory for excluding the funds from the bankruptcy estate. QCA therefore believes judicial economy will be served by allowing intervention.

Plaintiffs argue that QCA should not be allowed to intervene under Rule 24. First, Plaintiffs contend that QCA cannot assert § 1109(b) as a basis for mandatory intervention because QCA is neither a creditor nor party in interest. Plaintiffs note that QCA has asserted that Check Holdings was a mere conduit with no ownership interest in the funds and that the funds are not property of the estate. As Plaintiffs see it, a party is only a creditor when it has a claim against the debtor or the estate. Also, Plaintiffs allege that QCA is not a "party in interest" because it does not have an interest in Debtors' reorganization and is not seeking equitable relief against any estate property.

6

Additionally, Plaintiffs believe that Debtors' bankruptcy estate is not a "specific fund" for purposes of Rule 24(a)(2). They argue that the money QCA claims is not part of a segregated fund. Plaintiffs also contend that QCA's Motion to Intervene is purely economic since QCA is only trying to ensure that there are sufficient funds to satisfy its interest. Finally, Plaintiffs assert that QCA's rights are not impaired because it can commence its own adversary proceeding.

Lastly, Plaintiffs claim that QCA does not add any new issues to the current adversary proceeding and cannot permissively intervene. They argue that if QCA is permitted to intervene, the amount that the Plaintiffs preserved by way of the Omnibus Order would be insufficient to pay both their claims and QCA's claims. Plaintiffs assert that QCA's late intervention works purely to its own advantage and prejudices the Plaintiffs.

## Analysis

### I. Mandatory Intervention Under Fed. R. Civ. P. 24(a)

A movant has an unconditional right to intervene when its motion is timely filed and either (A) a federal statute grants an unconditional right to intervene or (B) the movant claims an interest that is related to the property or transaction that is the subject of the adversary proceeding and disposing of the proceeding impairs or impedes the movant's ability to protect its interest as a practical matter, unless the parties adequately represent that interest.[2] Section 1109(b) of the Code grants creditors and parties in interest the ability to raise, appear, and be heard on any issue in a Chapter 11 case.[3] The Third Circuit has held that § 1109(b) provides an unconditional statutory right to

---

[2] Fed. R. Civ. P. 24(a).

[3] 11 U.S.C. § 1109(b).

intervene in adversary proceedings under Rule 24(a)(1).[4] A "creditor" under the Code is an entity that has a prepetition claim against the debtor or the estate.[5] A "claim" entails a "right to payment, whether or not reduced to judgment liquidated, unliquidated, fixed contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[6]

### a. Statutory Right

First, QCA asserts that the Third Circuit's recognition of § 1109(b) as a basis for mandatory intervention must be followed, even though other circuits have disagreed with § 1109(b)'s applicability to Rule 24(a)(1). Plaintiffs do not dispute this. Instead, Plaintiffs contend that QCA is neither a creditor nor party in interest under § 1109(b) because QCA alleges that the money it seeks is not property of the estate, which means that it does not have a claim. QCA responds by arguing that it is presumed to be a creditor because Debtors list QCA in their schedules and it filed a proof of claim, notwithstanding its reservation of rights. As discussed below, the Court finds that QCA is a creditor under § 1109(b). Thus, QCA must be allowed to intervene under Rule 24(a)(1).

In its Brief, QCA cites *Collier on Bankruptcy* ¶ 541.28, 11 USC § 1111(a) and two cases[7] to establish that QCA is a creditor under § 1109(b). *Collier* adds little to QCA's contention because the section relates to property in the possession of the debtor that is

---

[4] *Matter of Marin Motor Oil, Inc*. 689 F.2d 445, 453 (3d. Cir. 1982); *see also Official Committee of Unsecured Creditors of Allegheny International, Inc. v. Mellon Bank*, 107 B.R. 518, 523 (Bankr. W.D. Pa. 1989) (holding that *Marin* is still good law, notwithstanding the addition of Bankruptcy Rules 2018 and 7024).

[5] 11 U.S.C. § 101(10).

[6] 11 U.S.C. § 101(5)(A).

[7] *In re Marshall*, 298 B.R. 670, 675 (Bankr. C.D. Ca. 2003); *In re HBA East, Inc.*, 87 B.R. 248, 262-63 (Bankr. E.D.N.Y. 1988).

alleged to be held in trust for a nondebtor.[8] However, § 1111(a), in tandem with the cited cases, supports QCA's contention that it must be treated as a creditor until adjudicated otherwise.

Section 1111(a) provides that a proof of claim or interest is deemed filed under 11 USC § 501 if it appears on the debtor's schedules.[9] In *Marshall*, the bankruptcy court held that a scheduled claimant who failed to file its proof of claim in a Chapter 11 remained a party in interest with standing to object to a debtor's proposed reorganization plan and move for dismissal for lack of good faith.[10] There, the debtor listed the claimant in his schedules, but the claimant did not file a proof of claim.[11] The claimant objected when the debtor's plan was amended to not include the claimant's interest and pay the other creditors in full.[12] The *Marshall* court ultimately decided that even though the claimant could not vote on the plan or receive distributions, he could still object and move to dismiss based on §§ 1109(b) and 1112(b).[13] In *HBA East*, the court determined that a movant had standing under § 1109(b) to bring a motion to dismiss the debtor's chapter 11 petition, even though the movant's right to payment was disputed.[14]

---

[8] *5 Collier on Bankruptcy*, ¶ 541.28 (16th ed. 2010) ("When property in the possession of a debtor is alleged to be held in trust by the debtor for a nondebtor, and therefore not estate property under section 541, the burden rests upon the entity seeking to exclude the property from the estate to establish the existence of the claimed fiduciary relationship").

[9] 11 U.S.C. § 1111(a).

[10] *Marshall*, 298 B.R. at 675.

[11] *Id.* at 674.

[12] *Id.*

[13] *Id.* at 675 ("Under § 1109(b), any 'party in interest' may also object to a debtor's chapter 11 reorganization plan. Although Rule 3003(c)(2) states that 'any creditor who fails [to file a proof of claim] shall not be treated as a creditor with respect to such a claim for the purposes of voting and distribution,' [the claimant] is still a 'party in interest' for the purpose of objecting to the plan").

[14] *HBA East*, 87 B.R. at 262-63.

Precedent clearly indicates that QCA should be deemed a creditor under § 1109(b). First, QCA's claim that the funds are not property of Debtors' estate has not been determined by this Court. QCA is nominally a creditor based on Debtors' schedules and QCA's proof of claim. If QCA loses its claim against the Debtors, then QCA would have an interest in Debtors' reorganization and a prepetition claim against the estate.[15] In opposing QCA's interpretation, Plaintiffs cite four cases where a claimant was found to not be a creditor. Each case is briefly addressed in turn.

First, *In re Odle* concerned an attorney who filed a secured claim in the amount of 20% of a settlement that the debtor obtained pursuant to a state workers' compensation statute.[16] A court order was issued in the bankruptcy case that required the employer to make settlement payments directly to the trustee.[17] The trustee field an objection to the attorney's secured claim, and the court determined that the attorney's 20% interest was not a debt subject to discharge.[18] *Odle* is distinguishable on two grounds: (1) the debtor never listed the attorney as a creditor on his schedules and (2) the court held that the attorney did not have a claim after the trustee filed its objection and considered the applicable law governing the settlement.[19] Here, the Debtor's schedules list QCA, QCA has filed a proof of claim and the Court has not adjudicated QCA's claim on the merits.

Second, Plaintiffs rely on *In re Coger* for the proposition that property cannot be included in the estate when the debtor does not own it.[20] However, in In re *Coger*, like *Odle*, the claimant was found to not be a creditor *after* the court determined that the

---

[15] 11 U.S.C. § 101(10).

[16] *In re Odle*, 204 B.R. 714, 714-15 (Bankr. C.D. Ill. 1997).

[17] *Id.* at 715.

[18] *Id.* at 716.

[19] *Id.* at 714.

[20] *In re Coger*, 210 B.R. 803 (9th Cir. B.A.P. 1997).

claimed property was not part of the estate.[21] Moreover, the claimant was not listed on the debtor's schedules.[22] Thus, *Coger* does not address QCA's argument that it will remain a creditor until this Court decides that the funds at issue in QCA's proposed complaint are not property of the estate.

In the third case, *In re Lone Star Pub Operations, LLC*, the court held that the debtor did not have an ownership interest in the money that the trustee attempted to claw back from the defendants.[23] That case was in the context of a preference action, and did not address whether the defendants were creditors in the debtor's involuntary chapter 7 case.[24] Hence, *Lone Star* adds little to Plaintiffs' position that QCA is not a creditor or party in interest.

Lastly, the question in *In re Golden Triangle Capital, Inc.* was whether the claimed funds were part of a constructive trust.[25] There, the court performed the applicable state law analysis and determined that the funds were not property of the estate.[26] To reiterate, the Court has yet to determine whether the funds claimed by QCA are property of the estate. *Golden Triangle* therefore provides no support for denying QCA's Motion to Intervene.

### b. Interest in Property

Under Rule 24(a)(2), the Court must allow intervention when four requirements are met: (1) the application for intervention is timely, (2) the applicant has a sufficient interest in the litigation, (3) the interest may be affected or impaired, as a practical

---

[21] *See id.* at 807 (explaining that the claimant asserted in its motion for stay relief that it was not a creditor).

[22] *Id.* at 806.

[23] *In re Lone Star Pub Operations, LLC*, 465 B.R. 212, 215 (Bankr. D. Kan. 2012).

[24] *Id.* at 212.

[25] *In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 81 (9th Cir. B.A.P. 1994).

[26] *Id.* at 81-84.

matter by the disposition of the action and (4) the interest is not adequately represented by an existing party in the litigation.[27]

First, QCA argues that intervention is timely because adversary proceeding is in preliminary stages and therefore the Plaintiffs will not be prejudiced. However, Plaintiffs contend that they will be prejudiced because they took steps to ensure that their interest the funds are preserved until the adversary proceeding is resolved while QCA "sat on its rights for fifteen months."[28] Ultimately, the Court finds that QCA's motion was timely based on consideration of the totality of the circumstances.[29] The important inquiries are "what proceedings of substance on the merits have occurred," "the reason for delay," and how the delay prejudices the parties.[30]

At the time the Motion to Intervene was filed, an answer to the Complaint had not been filed, illustrating that the adversary proceeding was just beginning. Additionally, only six months elapsed between when the Plaintiffs filed their adversary complaint and when QCA filed its Motion to Intervene. The fact that QCA did not file its Motion to Intervene at the adversary proceeding's inception is *de minimis.* QCA formally became a creditor in the bankruptcy case when it filed its proof of claim on October 31, 2014, approximately three months after Plaintiffs' commenced the adversary proceeding. QCA filed its claim within a reasonable time "after [QCA] knew, or should have known,"[31] its rights were at risk. The real risk to QCA's ability to recover only arose after the Debtors' operating report showed that professional fees exceeded the

---

[27] *Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365 (3d Cir. 1995).

[28] Pls. Br. in Opposition p. 10, Feb. 4, 2015.

[29] *See Mountain Top*, 72 F.3d at 369.

[30] *Id.*

[31] *Id.* at 370 ("We have held that, 'to the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights'") (internal citation omitted).

cash of the estate and QCA brought its motion to intervene within two months of that disclosure.

Lastly, it is inconsequential to Rule 24(a)(2) analysis that QCA's claim may leave the Debtors with insufficient funds to pay both QCA and the Plaintiffs. As *Mountain Top* explains, the court should analyze prejudice in reference to the *delay* caused by intervention, not the effect that the prospective outcome of intervention may have on the non-intervenor's interest.[32] Here, the delay would not be prejudicial to Plaintiffs for two reasons: (1) the Court has already taken steps to protect the amount of Plaintiffs' aggregate claims from the accrual of the Debtors' professional fees; and, (2) QCA's proposed complaint rests on similar facts and legal theory, meaning that any additional time that the defendants need to respond to the complaints will be minimal.

In regard to the second requirement, QCA asserts that it has an interest in the limited funds that the trustee claims are part of the Debtors' estate. However, the Plaintiffs argue that the estate funds cannot be "specific funds" by merely being part of Debtors' bankruptcy estate. Plaintiffs' rely on the fact that the money QCA claims an interest in was not set aside in a discrete fund. According to Plaintiffs, the timing of QCA's motion indicates that its interest is purely economic, which is insufficient to establish a "significantly protectable" interest under *Liberty Mutual Insurance Co. v. Treesdale, Inc.*[33] However, QCA does have an interest in a specific fund because the threat to QCA's ability to recover the funds that it claims are not part of the estate is "tangible" to the legally cognizable interest.[34] As a general matter, QCA as a creditor has an interest in any estate funds specifically held by the Trustee for the purposes of satisfying claims against the estate.

---

[32] *Id.* at 370 (emphasis added).

[33] *See Liberty Mutual Insurance Co. v. Treesdale, Inc.,* 419 F.3d 216, 220-21 (3d Cir. 2005); *see also Mountain Top*, 72 F.3d at 366.

[34] *Mountain Top*, 72 F.3d at 366.

13

Moreover, the Omnibus Order effectively sets aside $900,000 of the estate's funds to provide Plaintiffs, in the event they succeed in the adversary proceeding, with the opportunity to recover moneys they claim are not property of the estate available to general creditors. QCA claims a similar interest to Plaintiffs, which is significantly protectable by the amount reserved in the Omnibus Order. Thus, the movants in *Liberty Mutual* are distinguishable from QCA because those movants did not have a property or legally protectable interest in the funds subject to dispute.[35] Rather, the movants had a purely economic interest in the funds being available so that funds could be used to satisfy their claims in an entirely distinct and separate litigation with one of the parties.[36]

Additionally, QCA contends that its interest may be impaired because the estate's funds could be depleted if Plaintiffs prevail on their claims. Plaintiffs counter this by contending that QCA could institute its own adversary proceeding against Debtors. However, Plaintiffs' argument does not negate the possibility that their recovery might impede QCA's recovery. Currently, the Omnibus Order only covers the amount that the Plaintiffs claim is not property of the estate, which means that disbursements could be made from the estate until there is not enough cash available for QCA's claim.[37]

Lastly, Plaintiffs are only asserting the amount of their respective claims and have not excluded money to the benefit of QCA or any other creditor with a similar position against property of the estate. Thus, Plaintiffs do not adequately represent QCA's

---

[35] 419 F.3d at 222 (explaining that the movants did not have a property interest in the insurance policy, which was between the plaintiff and defendant).

[36] *Id.* (indicating that the movants only wanted to make sure that the insurance company continued to pay money under the policy so that the movants would be able to collect on their claims against the plaintiff in a separate suit).

[37] *See Mountain Top*, 72 F.3d at 368 (explaining that if the plaintiff and defendant in the litigation settled then the movant would have been the beneficiaries of a worthless trust, which precludes the movant's ability to recover the amount of its claim).

14

interest in the funds.[38] Therefore, the Court finds that QCA has the right to intervene under both Fed. R. Civ. P. 24(a)(1) and (a)(2).

## II. Permissive Intervention Under Fed. R. Civ. P. 24(b)

A court may permit anyone to intervene when a timely motion is filed, and there is either (1) a federal statute that provides the intervener a conditional right or (2) "the claim or defense that the intervener asserts shares a common question of law or fact with the main action."[39] Permissive Intervention is allowed at a court's discretion.[40]

QCA relies on *Moore's Federal Practice* to assert that the question of fact that it raises in its proposed complaint is identical to Plaintiffs' claims in that they both allege a contractual relationship and Check Holding's failure to reimburse funds pursuant to the contract during the same time period. Also, QCA contends that the legal theory raised is the same as Plaintiffs' because they both argue that Check Holding was a "pass through" for the funds and therefore Check Holding never had an ownership interest in the funds. Finally, QCA insists intervention is warranted because judicial economy and consistency will be served by resolving these issues in a single proceeding.

In response, Plaintiffs cite two cases for the proposition that movants should not be allowed to intervene when they add no new issues to the present litigation; neither case, however, weighs against permitting intervention here. The movants in *Hallco* and *Bisanz*, respectively, were already adequately represented by litigants in those

---

[38] *See id.* at 368-69 ("The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate").

[39] Fed. R. Civ. P. 24(b).

[40] *Bell Atlantic-Delaware, Inc. v. Global NAPS South, Inc.*, 77 F. Supp. 2d 492, 502 (D. Del. 1999).

proceedings.[41] In *Hallco*, the court decided that the movant's interests were already adequately represented by the present parties to the litigation because the movant and the plaintiff were seeking the same assets for the plaintiff's benefit—rather than additional funds for the movant's benefit, as QCA seeks here.[42] In *Bisanz*, the movants wished to intervene as defendants in a nuisance action against railroads and storage yards that operated in residential areas.[43] The *Bisanz* court denied the motion because the movants interest in operating its automobile manufacturing site was already represented by the existing defendants, and the movants intervened solely to emphasize the importance of the issues that the existing defendants had raised.[44] Both cases are clearly distinguishable because neither movant sought intervention to protect an interest not adequately represented by the current parties to the litigation.

Because the Court agrees that judicial economy and consistency would be served by allowing intervention, and because QCA's intervention protects an interest not served by the existing Plaintiffs, the Court holds that permissive intervention is warranted under Fed. R. Civ. P. 24(b).

## Conclusion

The Court finds that QCA has a right to intervene under Fed. R. Civ. P. 24(a)(1) and (a)(2), and that permissive intervention is warranted under Fed. R. Civ. P. 24(b). For the reasons set forth above, the Court will grant the Motion to Intervene.

---

[41] *Hallco Mfg. Co., Inc. v. Quaeck*, 161 F.R.D. 98, 103 (D. Or. 1995); *Bisanz Bros., Inc. v. Chicago-Milwaukee-St. Paul & Pac. R. Co.*, 20 F.R.D. 353, 355 (D. Minn. 1957).

[42] *Hallco*, 161 F.R.D. at 101-02 (establishing that the plaintiff alleged fraud, breach of fiduciary duties, and misappropriation against the defendant and that the movant is asserted fraud claims against the defendants that are already encompassed in the plaintiff's claims).

[43] *Bisanz,* 20 F.R.D. at 354.

[44] *Id*.