# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MONEY CENTERS OF AMERICA, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br>Case No. 14-10603-CSS<br>(Jointly Administered) |
| CASINO CARIBBEAN, LLC, MACAU CASINO, LLC, MACAU SOUTHCENTER, LLC, and YAKIMA CARDROOM, LLC,<br><br>Plaintiffs,<br><br>and<br><br>QUAPAW CASINO AUTHORITY OF THE QUAPAW TRIBE OF OKLAHOMA,<br><br>Intervening Plaintiff,<br><br>v.<br><br>MONEY CENTERS OF AMERICA, INC. and CHECK HOLDINGS, LLC,<br><br>Defendants. | Adv. Pro. No. 14-50437-CSS<br><br>**Related D.I.: 64** |

## MOTION OF THE QUAPAW CASINO AUTHORITY TO DISMISS TRUSTEE'S COUNTERCLAIM

The Quapaw Casino Authority of the Quapaw Tribe of Oklahoma (O-Gah-Pah) ("QCA")

d/b/a the Quapaw Casino ("Casino"), hereby moves, pursuant to Fed. R. Bankr. P. 7012 and Fed.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Money Centers of America, Inc. (9364) and Check Holdings, LLC (3671). The location of the Debtors' corporate headquarters and their service address is 601 S. Henderson Rd., Suite 153, King of Prussia, Pennsylvania 19406.

{01101297;v1 }

R. Civ. P. 12(b)(1), to dismiss the counterclaim filed by the trustee. (Doc. 64). In support, QCA submits separately its brief in support and further states as follows:

1.   QCA is a governmental subdivision of the Quapaw Tribe of Oklahoma. It owns and operates the Casino, a tribal gaming operation, in Miami, Oklahoma.

2.   On or about January 6, 2014, QCA entered into a "Financial Services Agreement" (the "Agreement") with debtor /adversary defendant Check Holdings, LLC ("Check Holdings").

3.   Under the Agreement, Check Holdings was to provide Automated Teller Machine ("ATM") and other cash advance transaction services to the Casino. Patrons of the Casino would use their credit or debit cards at ATMs at the Casino or would present checks to the Casino's cash vault and would receive cash. The Casino would advance the cash by stocking the ATMs with cash from its vaults or by directly providing cash to patrons for check advances, and Check Holdings would process the transactions. Check Holdings would reimburse the advanced funds to the Casino, less its retained fee for its services, within a matter of days.

4.   Between April 24, 2014, and May 14, 2014, the Casino advanced funds but Check Holdings failed to reimburse the funds despite several promises to do so. The Casino terminated the Agreement effective May 15, 2014.

5.   Check Holdings filed its petition in bankruptcy shortly thereafter, on May 23, 2014. QCA is listed in its schedules as a creditor and also filed a proof of claim evidencing that the amount of cash advanced under the Agreement but not reimbursed was $502,018.00.

6.   On July 7, 2014, the plaintiffs filed this adversary case alleging that Check Holdings was merely a "pass-through" for funds advanced prior to reimbursement and that, as such, the funds are not property of Check Holdings' bankruptcy estate.

7. On January 28, 2016, QCA was granted leave to intervene as an additional adversary plaintiff. QCA had moved to intervene on claims substantively identical to that of the plaintiffs. On February 2, 2016, QCA filed its intervenor complaint.

8. On March 2, 2016, the trustee filed its answer and counterclaim. The counterclaim alleges that reimbursements made by Check Holdings to QCA from February 24, 2014, to April 23, 2014, were avoidable preference payments. The amount the trustee seeks to recover is $1,114,020.76.

9. Under established precedent, QCA, as a governmental subdivision of a federally recognized Indian tribe, is immune from suit unless Congress waives tribal sovereign immunity, or the tribe consents to be sued. *See, inter alia, Michigan v. Bay Mills Indian Community*, 572 U.S. ___, 134 S. Ct. 2024, 2030-31 (2014).

10. The bankruptcy code at 11 U.S.C. § 106(a) provides a waiver of sovereign immunity for states, commonwealths, municipalities, and other governments, but does not waive immunity for federally recognized Indian tribes. *See, inter alia, Buchwald Capital Advisors, LLC v. Papas (In re Greektown Holdings, LLC)*, 532 B.R. 680 (E.D. Mich. 2015); *In re Whitaker*, 474 B.R. 687 (B.A.P. 8th Cir. 2012); *In re National Cattle Congress*, 247 B.R. 259 (Bankr. N.D. Iowa. 2000).

11. QCA did not waive its sovereign immunity for counterclaims by filing its intervenor complaint. *See, inter alia, Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509, 111 S. Ct. 905, 909 (1991); *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 511–512, 60 S. Ct. 653, 655–656 (1940).

12. QCA also did not waive its sovereign immunity voluntarily by participating as a creditor or adversary plaintiff in Check Holdings' bankruptcy proceeding. *See, inter alia, See In*

*re White*, 139 F.3d 1268, 1271 (9th Cir. 1998); *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S. Ct. 467, 471 (1947).

13.    The trustee's counterclaim also is barred by tribal sovereign immunity because it does not sound in recoupment, and therefore does not fit within the limited exception for defenses and counterclaims in recoupment.  *See, inter alia, Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1345 (10th Cir. 1982).

For the foregoing reasons, QCA requests that the trustee's counterclaim be dismissed for lack of subject matter jurisdiction on the basis of tribal sovereign immunity.

### STATEMENT PURSUANT TO DEL. BANKR. L.R. 7012-1

QCA, the filing party, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**-Rest of Page Left Intentionally Blank-**

{01101297;v1 }

Dated: March 23, 2016          Respectfully submitted,

*/s/Benjamin W. Keenan*
Ricardo Palacio (No. 3756)
Benjamin W. Keenan (No. 4724)
ASHBY & GEDDES, P.A.
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
RPalacio@ashby-geddes.com

-and-

Daniel E. Gomez, Okla. Bar No. 22153*
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, Oklahoma 74172-0148
Telephone: (918) 586-8984
Facsimile: (918) 586-8311

*Admitted Pro Hac Vice*

*Attorney for the Quapaw Casino Authority of the Quapaw Tribe of Oklahoma (O-Gah-Pah)*

{01101297;v1 }