# UNITED STATES BANKRUPTCY COURT
## THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                               :

| | |
|---|---|
| In re: | Chapter 11 |
| MONEY CENTERS OF AMERICA, INC., *et al.,* | Case No. 14-10603 (CSS) |
| Debtors.[1] | (Jointly Administered) |

| | |
|---|---|
| CASINO CARIBBEAN, LLC, MACAU CASINO, LLC, MACAU SOUTHCENTER, LLC, and YAKIMA CARDROOM, LLC, | |
| Plaintiffs, | |
| and | |
| QUAPAW CASINO AUTHORITY OF THE QUAPAW TRIBE OF OKLAHOMA, | Adversary Proceeding No. 14-50437 (CSS) |
| Intervening Plaintiff, | |
| v. | |
| MONEY CENTERS OF AMERICA, INC., and CHECK HOLDINGS, LLC, | |
| Defendants. | |

---------------------------------------------------------- x

# CHAPTER 11 TRUSTEE'S MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO DISMISS OF QUAPAW CASINO AUTHORITY

COLE SCHOTZ P.C.
Norman L. Pernick (No. 2290)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131

COVINGTON & BURLING LLP
Benjamin J. Razi
Dennis B. Auerbach
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
Telephone: (202) 662-6000

Dianne Coffino
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000

Dated: April 11, 2016

*Co-Counsel for the Chapter 11 Trustee*

---

[1]       The Debtors in these Chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Money Centers of America, Inc. (9364) and Check Holdings, LLC (3671). The location of the Debtors' former corporate headquarters is 601 S. Henderson Rd., Suite 153, King of Prussia, Pennsylvania 19406. The Debtors' current service address is c/o Michael St. Patrick Baxter, One CityCenter, 850 Tenth Street, NW, Washington, DC, 20001-4956.

i

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................................. 1

II.     Background ................................................................................................................... 3

III.    Argument ...................................................................................................................... 5

        A.      Quapaw Casino's Motion Should Be Denied Because It Is Based on Facts
                Beyond the  Pleadings, Which Quapaw Casino Will Have the Burden of
                Proving at Trial. ............................................................................................... 5

        B.      Congress Has Abrogated any Applicable Tribal Sovereign Immunity. ................. 7

        C.      Quapaw Casino Has Waived Sovereign Immunity by Filing a Proof of
                Claim That Concerns the Same Subject Matter as the Trustee's
                Counterclaims. .............................................................................................. 13

Conclusion ............................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*995 Fifth Ave. Assoc., L.P. v. NY State Dept. of Taxation and Fin. (In re 995 Fifth Avenue Assoc., L.P.),*
  963 F.2d 503 (2d Cir. 1992)...................................................................................13, 18

*In re ABEPP Acquisition Corp.,*
  215 B.R. 513 (B.A.P. 6th Cir. 1997)....................................................................14

*Anes v. Dehart,*
  195 F.3d 177 (3d Cir. 1999)..................................................................................15

*Arecibo Cmty. Health Care, Inc. v. Commonwealth of Puerto Rico,*
  270 F.3d 17 (1st Cir. 2001)...................................................................13, 14, 16, 18

*Bassett v. Mashantucket Pequot Tribe,*
  204 F.3d 343 (2d Cir. 2000)..................................................................................12

*Blue Legs v. United States Bureau of Indian Affairs,*
  867 F.2d 1094 (8th Cir. 1989) ...............................................................................8

*Breakthrough Mgmt. Group v. Chukchansi Gold Casino and Resort,*
  629 F.3d 1173 (10th Cir. 2010) ..........................................................................5, 6

*Buchwald Capital Advisors, LLC v. Papas (In re Greektown Holdings, LLC,*
  532 B.R. 680 (D. Mich. 2015) ..........................................................................11, 12

*Carter v. City of Philadelphia,*
  181 F.3d 339 (3d Cir. 1999)...............................................................................5, 6

*Christy v. Pennsylvania Turnpike Comm'n,*
  54 F.3d 1140 (3d Cir. 1995)..................................................................................5

*College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Board,*
  527 U.S. 666 (1999).............................................................................................14

*In re Davis Chevrolet, Inc.,*
  282 B.R. 674 (Bankr. D. Ariz. 2002)...........................................................10, 15, 16

*F.A.A. v. Cooper,*
  132 S.Ct. 1441 (2012)........................................................................................7, 8

*Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida,*
  166 F.3d 1126 (11th Cir. 1999) (ADA) ................................................................12

*Gardner v. New Jersey,*
    329 U.S. 565 (1947)........................................................................................18

*Jicarilla Apache Tribe v. Andrus,*
    687 F.2d 1324 (10th Cir. 1982) ....................................................................15

*In re Kaiser Group Intern, Inc.,*
    399 F.3d 558 (3d Cir. 2005)..............................................................13, 15, 16

*In re Klingberg Schools,*
    68 B.R. 173 (N.D. Ill. 1986) ............................................................13, 15, 16

*Krystal Energy Co. v. Navajo Nation,*
    357 F.3d 1055 (9th Cir. 2004), *cert. denied, Navajo Nation v. Krystal Energy*
    *Co., Inc.,* 543 U.S. 871 (2004).............................................................2, 8, 9, 11

*In re Lazar,*
    237 F.3d 967 (9th Cir. 2001) ....................................................................13, 14

*In re Malmart Mgmt. Co.,*
    109 B.R. 1 (Bankr. D. Mass. 1989) ..............................................................17

*In re Mayes,*
    294 B.R. 145 (10th Cir. B.A.P. 2003) ..........................................................10

*In re Maytag Sales & Serv., Inc.,*
    23 B.R. 384 (Bankr. N.D. Ga. 1982) ............................................................17

*Michigan v. Bay Mills Indian Cmty.,*
    134 S.Ct. 2024 (2014)..............................................................................2, 7, 8, 11

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes*
    *Corp.),*
    340 B.R. 510 (Bankr. D. Del. 2006) ..............................................................5

*In re Platinum Oil Props., LLC,*
    465 B.R. 621 (Bankr. D.N.M. 2011) ............................................................10

*Posen Construction, Inc. v. Lee Cty.,*
    921 F. Supp.2d 1350 (M.D. Fla. 2013)..........................................................6

*In re Russell,*
    293 B.R. 34 (D. Ariz. 2003)..................................................................9, 11

*Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.),*
    119 F.3d 1140 (4th Cir. 1997) ..................................................................13, 14

*U.S. v. Pullman Construction Indus.,*
    153 B.R. 539 (N.D. Ill. 1993) ......................................................................17

*Univ. Med. Ctr. v. Sullivan (In re Univ. Med.Ctr.)*,
    973 F.2d 1065 (3d Cir. 1992)...........................................................................15, 16

*In re Vianese*,
    195 B.R. 572 (Bankr. N.D.N.Y. 1995) ..................................................................10

*In re Whitaker*,
    474 B.R. 687 (B.A.P. 8th Cir. 2012)..........................................................2, 5, 6, 8

*WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*,
    840 F.2d 996 (1st Cir. 1988)...............................................................13, 15, 16, 17

**Statutes**

11 U.S.C. § 101(27) ............................................................................. *passim*

11 U.S.C. § 106.............................................................................1, 2, 5, 6

11 U.S.C. § 106(a) ............................................................................. *passim*

11 U.S.C. § 106(b) .......................................................................3, 13, 14, 16

11 U.S.C. § 502(d) ...........................................................................18

**Other Authorities**

2 *Collier on Bankruptcy* ¶ 101.27 (Alan N. Resnick & Henry J. Sommer eds.,
    16th ed. 2016) ..........................................................................................10

Federal Rules of Civil Procedure Rule 13(a) ..............................................13

Michael St. Patrick Baxter, as Chapter 11 trustee ("**Trustee**") for Money Centers of America, Inc. ("**MCA**") and Check Holdings, LLC ("**Check Holdings**" and, together with MCA, "**Debtors**"), submits this memorandum of law in opposition to the *Motion of the Quapaw Casino Authority to Dismiss Trustee's Counterclaim* [Adv. Dkt. # 65] ("**Motion to Dismiss**") based on sovereign immunity.

## I.    Introduction

The Quapaw Casino Authority ("**Quapaw Casino**") tries to have it both ways.  First, Quapaw Casino claims to be a "*governmental subdivision* of a federally recognized Indian Tribe" entitled to sovereign immunity (Quapaw Br. at 1, emphasis added).  But it then denies that it is a "governmental unit" for purposes of the broad abrogation of sovereign immunity for governmental units set forth in Section 106 of the Bankruptcy Code.  As shown below, that contradictory position cannot be sustained.  Either Quapaw Casino is *not* a governmental unit and thus lacks sovereign immunity in the first place; or it *is* a governmental unit, whose immunity is abrogated by the Bankruptcy Code.  Moreover, even if Section 106 does not abrogate Quapaw Casino's sovereign immunity, it has waived any sovereign immunity it may have had by filing a proof of claim in Check Holdings' bankruptcy case that is inextricably intertwined with the counterclaim that is the subject of the Motion to Dismiss.

More specifically,  the Motion to Dismiss must be denied for at least three reasons.

*First*, there is a threshold question of whether Quapaw Casino is even a sovereign covered by the doctrine of sovereign immunity, which cannot be resolved on a motion to dismiss.  If Quapaw Casino is not a sovereign, then the Court need not reach the issues of abrogation or waiver of immunity.  Quapaw Casino is a casino authority.  As such, it is (by Quapaw Casino's own admission) a "subdivision" of an Indian tribe — not the tribal government

itself.  Tribal sovereign immunity only extends to subdivisions of a tribe if the "relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity."  *See In re Whitaker*, 474 B.R. 687, 696 (B.A.P. 8th Cir. 2012) ("***Whitaker***").  This determination involves a number of factual inquiries into the structure and management of the tribal entity.  Quapaw Casino's purported entitlement to immunity depends on such facts, which Quapaw Casino will have the burden of proving at trial.  They cannot be assumed true on a motion to dismiss.

*Second*, even assuming, *arguendo*, that tribal sovereign immunity applies to Quapaw Casino, its Motion to Dismiss still must be denied because the Bankruptcy Code expressly abrogates any such immunity.  Section 106(a) of the Bankruptcy Code broadly abrogates the sovereign immunity of any "governmental unit."   Section 101(27), in turn, defines "governmental unit" to include every conceivable type of governmental entity, both foreign and domestic, including at the federal, state and municipal level.  *See* 11 U.S.C. §§ 101(27) and 106(a).  The "governmental units" as to which immunity is abrogated include a "State; Commonwealth; District; Territory; municipality; foreign state; department, [or] agency," as well as any "*other foreign or domestic government*."  11 U.S.C. § 101(27) (emphasis added).  The term "other . . . domestic government" clearly encompasses Indian tribes, which the Supreme Court has referred to as "*domestic dependent nations that exercise inherent sovereign authority*." *Michigan v. Bay Mills Indian Cmty.*, 134 S.Ct. 2024, 2030 (2014) (emphasis added, citations omitted) ("***Bay Mills***"); *see also id.* at 2041-42 ("Tribes are domestic governments") (Sotomayor, J., concurring).  Recognizing this, the majority of courts, including the only Court of Appeals to address the issue, have held that Indian tribes are among the "governmental units" whose sovereign immunity is abrogated by Section 106 of the Bankruptcy Code.  *See, e.g.,*

*Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1057 (9th Cir. 2004), *cert. denied, Navajo Nation v. Krystal Energy Co., Inc.*, 543 U.S. 871 (2004) ("***Krystal***").

*Third*, when a sovereign files a proof of claim, it waives sovereign immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence. Such waiver specifically applies to "governmental units" pursuant to Section 106(b) of the Bankruptcy Code. But even if Quapaw Casino were not deemed a "governmental unit," it still has waived immunity pursuant to the equitable principle that a party invoking a court's jurisdiction in a bankruptcy case consents to such jurisdiction to resolve all issues concerning the same transaction or occurrence. Here, Quapaw Casino's claims and the Trustee's counterclaims each arise from the same contract, and the "same transaction or occurrence" test is thus easily satisfied. Accordingly, Quapaw Casino has waived any sovereign immunity it may have.

In sum, Quapaw Casino either lacks sovereign immunity in the first place, or its immunity has been abrogated and waived. Either way, its Motion to Dismiss must be denied.

## II.    Background

Quapaw Casino claims to be a "governmental subdivision of a federally recognized Indian Tribe." Quapaw Br. at 1. It has intervened in this adversary proceeding, asserting that it owns $502,018 purportedly held by the Check Holdings bankruptcy estate. *See* Quapaw Complaint (Adv. Dkt. No. 60), ¶¶ 15-22. Quapaw Casino has also filed a proof of claim, asserting a creditor claim for the $502,018 at issue. *See* Proof of Claim No. 23, attached hereto as Exhibit A. The Trustee denies Quapaw Casino's allegations and has asserted counterclaims seeking to recover more than $1 million of preferential transfers paid to Quapaw Casino during the 90 days before Check Holdings' bankruptcy filing on May 23, 2014, and disallowance of

Quapaw Casino's proof of claim unless the preferential transfers are returned to the Check Holdings estate.  Trustee Counterclaim (Adv. Dkt. No. 64), ¶¶ 11-17.

The parties' dispute focuses on a Financial Services Agreement between Quapaw Casino and Check Holdings, dated January 6, 2014 ("**Financial Services Agreement"**).  *See* Quapaw Complaint, ¶ 8; Trustee Counterclaim, ¶ 8; *see also* Quapaw Casino Proof of Claim (Proof of Claim No. 23).  Pursuant to the Financial Services Agreement, Check Holdings was required to put a system in place to reimburse Quapaw Casino for funds advanced by Quapaw Casino to its casino patrons.  Quapaw Casino contends that it is owed such reimbursement in the amount of $502,018 and that it, not the Check Holdings estate, owns funds held by the estate in such amount — *i.e.*, that Check Holdings' obligation under the Financial Services Agreement is simply to act as a "pass through."  Quapaw Complaint, ¶ 19.  The Trustee counters that the Financial Services Agreement created a debtor-creditor relationship between Check Holdings and Quapaw Casino; that the amount purportedly owed by the estate to Quapaw Casino is thus a debt no different from the debts owed to other Check Holdings creditors; and that debts repaid by Check Holdings to Quapaw Casino under the Financial Services Agreement during the 90 days before Check Holdings' bankruptcy filing are avoidable preferences.  Trustee Counterclaim, ¶¶ 10-11.

Quapaw Casino has moved to dismiss the Trustee's preference counterclaim based on Quapaw Casino's asserted sovereign immunity.  The Motion to Dismiss must be denied.

### III.    Argument

**A.    Quapaw Casino's Motion Must Be Denied Because It Is Based on Facts Beyond the Pleadings, Which Quapaw Casino Will Have the Burden of Proving at Trial.**

The Motion to Dismiss must be denied because it depends on purported facts that are not contained in the pleadings and which Quapaw Casino will have the burden of proving at trial.

Contrary to Quapaw Casino's assertion, sovereign immunity is an affirmative defense — not an issue of subject matter jurisdiction. *See Christy v. Pennsylvania Turnpike Comm'n,* 54 F.3d 1140, 1144 (3d Cir. 1995); ("[Sovereign] immunity. . . does not implicate federal subject matter jurisdiction" but "should be treated as an affirmative defense."); *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999) (sovereign immunity "is an affirmative defense and the burden is thus on the DA's Office to establish its immunity from suit"). "(A) court cannot consider an affirmative defense on a motion to dismiss," unless the "defense appears on the face of the complaint." *See OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 536 (Bankr. D. Del. 2006) *citing Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). Quapaw Casino's sovereign immunity defense is based on facts that are *not* alleged in the Trustee's counterclaims and that Quapaw Casino will need to prove at trial. The defense thus cannot be resolved on a motion to dismiss.

Specifically, Quapaw Casino asserts that it is a "subdivision" of the Quapaw Tribe of Oklahoma ("**Tribe**"), a federally recognized Indian tribe entitled to tribal sovereign immunity. Quapaw Br. at 1, 5-6. The Trustee does not dispute that the *Tribe* qualifies for sovereign immunity (absent abrogation of such immunity under Section 106 and/or waiver). But that does not resolve whether *Quapaw Casino Authority*, a subdivision of the Tribe, also qualifies.

Tribal sovereign immunity may extend to subdivisions of a tribe, "including those engaged in economic activities, provided that the relationship between the tribe and the entity is

sufficiently close to properly permit the entity to share in the tribe's immunity." *See Whitaker*, 474 B.R. at 696; *Breakthrough Mgmt. Group v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010). The "most commonly accepted test" for determining whether the relationship between a tribe and an economic subdivision is "sufficiently close" for purposes of extending sovereign immunity to the subdivision is the "subordinate economic entity test." *Whitaker*, 474 B.R. at 697; *Breakthrough Mgmt. Group*, 629 F.3d at 1187. In applying that test, courts look to the following factors:

1) The method of creation of the economic subdivision;

2) The purpose of the economic subdivision;

3) The structure, ownership, and management of the economic subdivision, including the amount of control the tribe has over it;

4) The tribe's intent with respect to sharing its sovereign immunity;

5) The financial relationship between the tribe and the economic subdivision;

6) The policies underlying tribal sovereign immunity, and whether these policies are served by extending such immunity to the economic subdivision.

*Id.*

These issues are obviously factual. There is no basis in the pleadings for the Court to conclude that the factual predicates for extending the Tribe's immunity to Quapaw Casino are satisfied. Rather, Quapaw Casino will have the burden of proving at trial that they are. *See Carter*, 181 F.3d at 347. Accordingly, Quapaw Casino's Motion to Dismiss should be denied. *See, e.g., Posen Construction, Inc. v. Lee Cty.*, 921 F. Supp. 2d 1350, 1359 (M.D. Fla. 2013) (application of sovereign immunity to purported subdivision of sovereign entity could not be resolved on motion to dismiss where motion was based on unresolved facts).

**B.     Congress Has Abrogated any Applicable Tribal Sovereign Immunity.**

Even assuming *arguendo* that the Tribe's sovereign immunity extends to Quapaw Casino, Congress has clearly and unequivocally abrogated tribal sovereign immunity with respect to the counterclaims at issue here by enacting Section 106 of the Bankruptcy Code.

Section 106(a) abrogates sovereign immunity for any "governmental unit" with respect to a wide variety of actions under the Bankruptcy Code, including preference claims.  11 U.S.C. § 106(a)(1).  Section 101(27), in turn, defines "governmental unit" broadly to include entities that exercise sovereign authority like the United States; a state; a commonwealth; a municipality; a territory; a foreign government; or any department, agency, or instrumentality of such entities. Section 101(27) then includes a final catch-all for any "other foreign or domestic government." 11 U.S.C. § 101(27).  The inclusion of this broad catch-all makes abundantly clear that *any* foreign or domestic entity exercising sovereign authority counts as a "governmental unit" under the Bankruptcy Code.

As noted above, the Supreme Court has specifically described Indian tribes as "*domestic dependent nations that exercise inherent sovereign authority*."  *Bay Mills*, 134 S.Ct. at 2030. (emphasis added and citations omitted).  That leaves no doubt that tribes are a kind of "domestic government" under Section 101(27).  Indeed, Justice Sotomayor said precisely that in her concurrence in *Bay Mills*, explaining flatly that "Tribes are domestic governments."  *Id.* at 2041-42.  Because Indian tribes are domestic governments, they unambiguously are "other . . . domestic governments" within the meaning of 11 U.S.C. § 101(27).

Quapaw Casino's contention that tribal immunity could only have been abrogated through the inclusion of the specific words "Indian tribes" in Section 101(27) is contrary to law. While abrogation of sovereign immunity "requires an unmistakable statutory expression of

congressional intent . . . Congress need not state its intent in any particular way." *F.A.A. v. Cooper*, 132 S.Ct. 1441, 1448 (2012) ("***Cooper***").  The Supreme Court has "never required that Congress use magic words" of abrogation.  *Id.*  "To the contrary, [the Court has] observed that the sovereign immunity canon 'is a tool for interpreting the law' and it does not displace the other traditional tools of statutory construction."  *Id.* (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008)).  It is only necessary "that the scope of Congress' waiver be clearly discernable from the statutory text in light of traditional interpretive tools."  *Cooper*, 132 S.Ct. at 1448.

By defining "governmental unit" to include any "other foreign or domestic government" in addition to the governmental entities specifically listed in the statute, Congress clearly expressed its intent in the Bankruptcy Code that the term cover *any* entity exercising sovereign authority.  That includes Indian tribes.  *See Bay Mills*,  134 S.Ct. at 2030 (tribes are "domestic dependent nations that exercise inherent sovereign authority") (citations omitted).  While Congress has used the term "Indian tribe" in other statutes addressing jurisdiction over Indian tribes (*see, e.g., Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir. 1989)), there simply is no requirement that such "magic words" be used where, as here, Congress' intent is otherwise clear.

Against this backdrop, the majority of courts, including the only Court of Appeals to address the issue, have held that Sections 106(a) and 101(27) of the Bankruptcy Code clearly and unequivocally abrogate tribal sovereign immunity.

In *Krystal*, recognized as the "leading" case on this issue,[2] the Ninth Circuit held that it is clear from the face of Sections 106(a) and 101(27) that Congress intended to abrogate "the

---

[2]        *See Whitaker*, 474 B.R. at 693.

sovereign immunity of *all* 'foreign and domestic governments.'"  357 F.3d at 1057 (emphasis in original).  The Ninth Circuit correctly recognized that "the Supreme Court's decisions do not require Congress to utter the magic words 'Indian tribes' when abrogating tribal sovereign immunity."  *Krystal*, 357 F.3d at 1061, *citing Cooper*, 132 S.Ct. at 1448.  The court noted that "Indian tribes are certainly governments" and "logically" must be either foreign or domestic because there is "no other form of government outside" of that "dichotomy."  *Krystal*, 357 F.3d at 1057.  The Ninth Circuit further observed that the Supreme Court has specifically recognized Indian tribes as "'domestic dependent nations' that exercise inherent sovereign authority over their members and territories" and that an Indian tribe was simply a "specific member of the group of domestic governments, the immunity of which Congress intended to abrogate."  *Id.* at 1058, *citing Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991).  The court explained that Congress had legislated "against the back-drop of [these] prior Supreme Court decisions, which do define Indian tribes as domestic nations, *i.e.*, governments, as well as against the ordinary, all-encompassing meaning of the term "other foreign or domestic governments."  *Id.* at 1059.  The court concluded that simple logic thus dictates that Congress abrogated immunity for Indian tribes:  "Congress explicitly abrogated the immunity of any 'foreign or domestic government.'  Indian tribes are domestic governments.  Therefore, Congress expressly abrogated the immunity of Indian tribes."  *Id.* at 1058.

The Ninth Circuit in *Krystal* rejected the notion advanced by Quapaw Casino here that the absence of the word "Indian tribes" in Section 101(27) means that Congress did not intend to include tribes as governmental units.  *Id.*  Because Indian tribes clearly are "domestic governments," there was no need for Congress to list Indian tribes as a specific instance of all "foreign and domestic governments" as to which immunity was abrogated — just as there was

no need for Congress to specifically list "Wyoming" as one of the states for which immunity was abrogated. *Id.*

A majority of other courts addressing the issue have similarly held that Sections 101(27) and 106(a) clearly and unequivocally abrogate tribal sovereign immunity. *See In re Russell*, 293 B.R. 34, 44 (D. Ariz. 2003) (Section 106(a) "unequivocally" abrogates tribal sovereign immunity) ("***Russell***"); *In re Platinum Oil Props., LLC*, 465 B.R. 621, 644 n. 18 (Bankr. D.N.M. 2011) (Section 106(a) expressly abrogates tribal sovereign immunity); *In re Davis Chevrolet, Inc.*, 282 B.R. 674, 683 n. 5 (Bankr. D. Ariz. 2002) ("It seems to this court that 'other domestic government' is broad enough to encompass Indian tribes"); *In re Vianese*, 195 B.R. 572, 575-76 (Bankr. N.D.N.Y. 1995) (Section 106(a) abrogates the sovereign immunity of Indian tribes because Indian nations "are considered 'domestic dependent nations' and as such comprise 'governmental units' within the meaning of Code § 106(a)").

The *Collier* treatise likewise concludes that Indian tribes are "governmental units" whose immunity is abrogated by the Bankruptcy Code because they are a form of "other . . . domestic government." *Collier* explains that "[t]he use of the catch-all phrase, 'or other foreign or domestic government' has been read as meaning that 'all foreign and domestic governments, including but not limited to those particularly enumerated in the first part of the definition, are considered 'governmental units' for the purpose of the Bankruptcy Code.' *Thus, Indian tribes are governmental units because they are domestic governments*." 2 *Collier on Bankruptcy* ¶ 101.27 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) (emphasis added, citations omitted); *see also id.* ¶ 106.04 ("Section 106(a) provides that 59 specified provisions of title 11 are applicable to federal, state, local and foreign governments, *including Indian Tribes*") (emphasis added, citations omitted); *accord In re Mayes*, 294 B.R. 145, 159-60 (10th Cir. B.A.P.

2003) (McFeeley, J., dissenting) ("The fact that Indian tribes have been referred to as 'domestic dependent nations' incorporates them into § 106(a). If an Indian tribe is a 'domestic dependent nation' then it is also an 'other . . . domestic government.'").

These authorities echo the Ninth Circuit's recognition in *Krystal* that the words "other . . . domestic government" in Section 101(27) unequivocally apply to Indian tribes. The court in *Russell* indeed noted that there is no other plausible construction of that phrase. *Russell*, 293 B.R. at 41. The court explained that "other . . . domestic government" necessarily must refer to Indian tribes because there is nothing else to which the phrase *could* plausibly refer. *Id.* In the court's words: "[S]ince the meaning of 'or other foreign or domestic government' cannot include the United States, or a State, Commonwealth, Territory or District, or a municipality, or a foreign state, or an agency, department or instrumentality of any of them, because they are all expressly mentioned, it is difficult if not impossible to come up with any possible meaning for 'other domestic government' except Indian tribes. Without another reasonable plausible alternative meaning, the abrogation of sovereign immunity as to all domestic governments is not equivocal. It could hardly be more absolute." *Id.*

The contrary cases on which Quapaw Casino relies reflect a poorly-reasoned minority view that gives short shrift to the critical facts that (a) no specific "magic words of abrogation" are required to abrogate sovereign immunity; (b) Section 101(27) defines "governmental unit" broadly to include any "other foreign or domestic government;" and (c) Indian tribes have long been recognized by the Supreme Court as "domestic dependent nations that exercise inherent sovereign authority," *i.e.*, as a kind of domestic government. *See Bay Mills*, 134 S.Ct. at 2030. None of the cases cited by Quapaw Casino coherently explains why an Indian tribe, which

indisputably exercises sovereign authority within the borders of the United States, is not an "other . . . domestic government" within the plain meaning of Section 101(27).

Indeed, the court in *Buchwald Capital Advisors, LLC v. Papas (In re Greektown Holdings, LLC)*, upon which Quapaw Casino relies, expressly acknowledges that an Indian tribe is both "domestic" and a "government." 532 B.R. 680, 697 (D. Mich. 2015). Yet it somehow concludes that a tribe nonetheless does not qualify as a "domestic government" under Section 101(27). *Id.* That conclusion makes no sense. If an entity is both "domestic" and a "government," then it unambiguously is a "domestic government" under any plausible construction of those words. There is nothing about Indian tribes that requires abandoning the most basic rule of statutory construction that a statute must be interpreted in accordance with its plain meaning. Quapaw Casino contends that ambiguous statutes must be construed in a tribe's favor, but there is no ambiguity here.

Other cases relied on by Quapaw Casino are inapposite. Quapaw Casino cites cases holding that tribes are immune from suit under the Americans With Disabilities Act and the Copyright Act. *See, e.g., Florida Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1132-33 (11th Cir. 1999) (ADA); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 357-58 (2d Cir. 2000) (Copyright Act). But unlike the Bankruptcy Code, those statutes contain no broad abrogation of immunity for "other . . . domestic governments." The category "domestic governments" unequivocally encompasses Indian tribes, as the Ninth Circuit and a majority of other courts have recognized.

In short, if Quapaw Casino is indeed a "governmental subdivision" covered by sovereign immunity, as it claims to be (Quapaw Br. at 1), then it is also a "domestic government" whose sovereign immunity has been abrogated pursuant to the unambiguous words of Bankruptcy Code

Section 106(a).  Accordingly, the Motion to Dismiss based on sovereign immunity should be denied.

### C.    Quapaw Casino Has Waived Sovereign Immunity by Filing a Proof of Claim That Concerns the Same Subject Matter as the Trustee's Counterclaims.

Finally, Quapaw Casino waived any sovereign immunity it may have had concerning the Trustee's counterclaim when it filed a proof of claim against Check Holdings.  Quapaw Casino does not dispute that when a sovereign files a proof of claim, a waiver of sovereign immunity is effected; rather, Quapaw Casino argues that the scope of the waiver is limited to the equitable defense of recoupment.  (Quapaw Br. at 15-18).  Quapaw Casino is wrong.

Every circuit court that has addressed this issue, including the Court of Appeals for the Third Circuit, has held that the filing of a proof of claim by a sovereign entity results in a waiver of sovereign immunity with respect to estate claims that arise from "the same transaction or occurrence."[3]  *See In re Kaiser Group Intern, Inc.*, 399 F.3d 558, 556 (3d Cir. 2005) ("***Kaiser***") (waiver extends to estate-owned claims that arise out of the same transaction or occurrence); *Arecibo Cmty. Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 28 (1st Cir. 2001) ("***Arecibo***") ("If the [sovereign] chooses to file a proof of claim with the court, it exposes itself to liability arising from a compulsory counterclaim" which arises from the same transaction or occurrence); *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001) ("***Lazar***") (same); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.)*, 119 F.3d 1140, 1148 (4th Cir. 1997) ("***Creative Goldsmiths***") (same); *995 Fifth Ave. Assoc., L.P. v. NY State Dept. of Taxation and Fin.* (*In re 995 Fifth Avenue Assoc., L.P.)*, 963 F.2d 503, 509 (2d Cir. 1992) (same).

---

[3]     The "same transaction or occurrence" standard  incorporated in Section 106(b) is borrowed from the standard used to define compulsory counterclaims in Rule 13(a) of the Federal Rules of Civil Procedure.  *See WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*, 840 F.2d 996, 1005 (1st Cir. 1988) ("***WJM***"); *In re Klingberg Schools*, 68 B.R. 173, 177 (N.D. Ill. 1986) ("***Klingberg***").

This rule is codified by Section 106(b) of the Bankruptcy Code.  Section 106(b) provides that a governmental unit that has filed a proof of claim, as Quapaw Casino has here, "is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate[4] and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."[5] 11 U.S.C. § 106(b).

The waiver rule, however, is not limited to entities that qualify as "governmental units" under Section 106(b).  The waiver of sovereign immunity contained in Section 106(b) reflects the general equitable principle that a sovereign "waives its sovereign immunity by invoking the jurisdiction of the federal courts."  *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Board*, 527 U.S. 666, 681 n.3 (1999) (citations omitted).  Section 106(b) "merely codifies an existing equitable circumstance under which a [sovereign] can choose to preserve its immunity by not participating in a bankruptcy proceeding or to partially waive that immunity by filing a claim."  *Arecibo*, 270 F.3d at 28 (citations omitted).

A waiver of sovereign immunity is thus effected by filing a proof of claim regardless of whether a tribe qualifies as a "governmental unit" for purposes of Section 106(b).   Indeed, in *Lazar*, the Ninth Circuit specifically held that a sovereign's filing of a proof of claim constitutes a waiver of sovereign immunity as to counterclaims arising from the same transaction or occurrence based on general equitable principles—regardless of Section 106(b).  *See Lazar*, 237 F.3d at 979; *accord Creative Goldsmiths*, 119 F.3d at 1148; *see also In re ABEPP Acquisition*

---

[4]      Quapaw Casino does not (and cannot) dispute that the Trustee's counterclaim, which seeks avoidance of preferential payments made to Quapaw Casino on or within 90 days prior to Check Holdings' Chapter 11 filing, is a claim owned by the estate.

[5]      For the reasons stated above, Section 106(b) applies to Indian tribes, as governmental units.  *See*, *supra*, Section B.

*Corp.*, 215 B.R. 513 (B.A.P. 6th Cir. 1997) (state's waiver of sovereign immunity by filing a proof of claim "may be interpreted to transcend the explicit language of § 106(b)").

The waiver effected by filing a proof of claim concerns counterclaims that arise from "the same transaction or occurrence," but that phrase has been interpreted liberally by courts.  *See Warfield v. The Navajo Nation (In re Davis Chevrolet, Inc.)*, 282 B.R. 674, 681 (D. Ariz. 2002) ("'Transaction' is a word of flexible meaning.") (quoting *Lazar*, 237 F.3d at 979); *Klingberg*, 68 B.R. at 177 ("The term 'transaction' is to be construed generously to avoid the necessary expense inherent in a multiplicity of litigation.") (citations omitted).  To determine whether counterclaims arise out of the same transaction or occurrence for purpose of a waiver of sovereign immunity, the Third Circuit, like other circuits, applies the "logical relationship" test.  *See Kaiser*, 399 F.3d at 569.  Under this test, an estate counterclaim arises from the same transaction as the sovereign's proof of claim if it is logically related or arises from the same course of dealings by the parties.  *Id.*; *see also WJM*, 840 F.2d at 1005  ("The 'transaction' from which these claims arose is thus most readily defined as the course of dealings between the DPW and each home under the provider contracts."); *Klingberg*, 68 B.R. at 177.

Contrary to Quapaw Casino's contention, the waiver effected by the filing of a proof of claim is not limited to claims that sound in recoupment.[6]  *See Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),*  973 F.2d 1065, 1080, 1086 (3d Cir. 1992) ("**University Medical**").   In *University Medical*, a case relied upon by Quapaw Casino, the Third Circuit applied the "logical

---

[6]    Quapaw Casino cites *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982), along with other non-bankruptcy cases cited in that decision, for the proposition that, by filing a lawsuit, a tribe only waives its sovereign immunity for defenses sounding in recoupment.  These cases are inapposite: Not one of the cases was decided in the context of a bankruptcy case, and none address the effect of filing a proof of claim on sovereign immunity for a preference claim.  Indeed, the Third Circuit decision, *Anes v. Dehart (In re Anes)*, 195 F.3d 177, 182 (3d Cir. 1999), relied upon by Quapaw Casino, only addresses the common law doctrine of recoupment and has nothing to do with sovereign immunity.

relationship" test to determine the extent to which the Department of Health and Human Services had waived sovereign immunity by asserting a bankruptcy claim. The court held that the Bankruptcy Code plainly waives sovereign immunity "with respect to monetary liability for compulsory counterclaims to governmental claims." *See University Medical*, 973 F.2d at 1086. The First Circuit reached the same conclusion in *Arecibo*: "[T]o the extent that we are asked to determine whether § 106(b) permissibly waives a state's immunity only with regard to defensive counterclaims for recoupment, or whether that provision may be applied, as written, to allow for a broader affirmative recovery from the state, we believe both that the precedential effect of *WJM* is decisive on this issue and that, in any event, *allowance of a broader affirmative recovery is the legally and constitutionally appropriate way to construe the scope of the waiver*." *Arecibo*, 270 F.3d at 27 (emphasis added).

Nor is the term "transaction" limited temporally, as Quapaw Casino contends. (Quapaw Br. at 17-18). To the contrary, the Third Circuit has expressly held that "[I]t is not necessary that the parties' claims arise at the same moment . . . Rather, the transaction may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Kaiser*, 399 F.3d at 569 (citations omitted).[7]

Quapaw Casino's claim bears more than a "logical relationship" to the Trustee's counterclaims under the Third Circuit standard. *First*, Quapaw Casino's claim and the Trustee's counterclaims arise under the same contract: the Financial Services Agreement. Claims and counterclaims arising under the same contract are based on the same transaction or occurrence. *See, e.g., WJM*, 840 F.2d at 1002-1003 (sovereign immunity waived where proof of claim and

---

[7]    Courts apply the logical relationship test to Indian tribes, as well as to states and other governmental entities, in assessing waiver of sovereign immunity. *See Warfield v. The Navajo Nation (In re Davis Chevrolet, Inc.)*, 282 B.R. 674, 678 (Bankr. D. Ariz. 2002).

preference claim both related to payments under same contract); *Klingberg Schools*, 68 B.R. at 177 (proof of claim and debtor's counterclaims arose out of same transaction or occurrence because claims were "both based on the same contract").

*Second*, the claim and counterclaims both involve precisely the same issue: whether the Financial Services Agreement established a debtor-creditor relationship between Check Holdings and Quapaw Casino and the nature of Check Holdings' obligations under the contract. *See U.S. v. Pullman Construction Indus.*, 153 B.R. 539, 542 (N.D. Ill. 1993) ("**Pullman**") ("[S]ince one of the elements of Pullman's preference claim under § 547(b) is that it owed a debt to the United States for unpaid taxes, many of the factual and legal issues overlap.  Consequently, by filing its proofs of claim, the United States is deemed to have waived its sovereign immunity with respect to Pullman's preference claim.")

*Third*, the Trustee seeks to avoid preferential transfers to Quapaw Casino under the Financial Services Agreement and courts have repeatedly held that preference claims by a bankruptcy estate arise out of the same transaction or occurrence as claims filed by a governmental entity against the estate. *See, e.g., WJM*, 840 F.2d at 1005 (preference claim seeking avoidance of payments made to DPW during 90 days prior to bankruptcy arose out of the same transaction as DPW's proofs of claim which sought recovery of overpayments during periods spanning at least 2 years); *Pullman*, 153 B.R. at 542 (preference claim seeking avoidance of preferential tax payments arose out of same transaction as IRS's claims for pre- and post-petition taxes); *In re Malmart Mgmt. Co.*, 109 B.R. 1, 3 (Bankr. D. Mass. 1989); *In re Maytag Sales & Serv., Inc.*, 23 B.R. 384 (Bankr. N.D. Ga. 1982) (preference claim seeking recovery of garnished funds from IRS arose out of same transaction as IRS's claims for unpaid taxes spanning different tax periods).

*Fourth*, Section 502(d) of the Bankruptcy Code bars any recovery on Quapaw Casino's claim until any preferential transfers have been repaid to the estate.  Quapaw Casino's claim and the Trustee's counterclaims thus are not only logically related—they are inextricably intertwined.  Accordingly, Quapaw Casino is not immune from suit on the Trustee's counterclaims.

Finally, *Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947), does not support Quapaw Casino's position that filing a proof of claim waives sovereign immunity only as to defensive objections to the proof of claim.  In *Gardner*, the issue before the Supreme Court was narrow: whether a state's sovereign immunity barred a debtor from asserting defensive objections to a proof of claim filed by a state.  The Court did not hold that the scope of waiver is *limited* to such defensive objections; rather, it addressed the only issue before it.

Since *Gardner*, courts have applied a broader rule of waiver, holding that when a sovereign files a proof of claim, it waives immunity with respect "to the full amount of any compulsory counterclaims" that the bankruptcy estate has against the sovereign.  *See Arecibo*, 270 F.3d at 28.  "[W]here a [sovereign] avails itself of the federal courts to protect a claim," it "waive[s] the [sovereign]'s immunity with respect to that claim *in toto*," including as to "compulsory counterclaims, even though they could require affirmative recovery from the [sovereign]."  *Id.*; *accord 995 Fifth Ave.*, 963 F.2d at 509 (state's filing of $2,137,486.76 claim effected waiver of immunity as to debtor's larger $2,608,603.80 counterclaim).

Quapaw Casino has voluntarily invoked this Court's jurisdiction by filing a proof of claim seeking recovery of funds held by the estate.  By doing so, Quapaw Casino has waived any sovereign immunity it may have had with respect to the Trustee's preference counterclaim, which arises out of the same transaction.  The Motion to Dismiss should be denied.

**<u>Conclusion</u>**

For the foregoing reasons, Quapaw Casino's Motion to Dismiss should be denied.

Dated: Wilmington, Delaware
      April 11, 2016

                    COLE SCHOTZ P.C.

                  By:  */s/ Patrick J. Reilley*
                      Norman L. Pernick (No. 2290)
                      Patrick J. Reilley (No. 4451)
                      500 Delaware Avenue, Suite 1410
                      Wilmington, DE  19801
                      Telephone:  (302) 652-3131
                      Facsimile:  (302) 652-3117

                      -and-

                      COVINGTON & BURLING LLP

                      Benjamin J. Razi
                      Dennis B. Auerbach
                      1201 Pennsylvania Avenue, N.W.
                      Washington, DC  20004-2401
                      Telephone:  (202) 662-6000
                      Facsimile:  (202) 778-5226

                      Dianne Coffino
                      620 Eighth Avenue
                      New York, NY  10018
                      Telephone:  (212) 841-1000
                      Facsimile:  (212) 841-1100
                      *Co-Counsel for the Chapter 11 Trustee*