# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MONEY CENTERS OF AMERICA, INC., *et al.*[1]<br><br>Debtors.<br><br>_____<br><br>CASINO CARIBBEAN, LLC, MACAU CASINO, LLC, MACAU SOUTHCENTER, LLC, and YAKIMA CARDROOM, LLC,<br><br>Plaintiffs,<br><br>and<br><br>QUAPAW CASINO AUTHORITY OF THE QUAPAW TRIBE OF OKLAHOMA,<br><br>Intervening Plaintiff,<br><br>v.<br><br>MONEY CENTERS OF AMERICA, INC. and CHECK HOLDINGS, LLC,<br><br>Defendants. | Chapter 11<br>Case No. 14-10603-CSS<br>(Jointly Administered)<br><br><br><br><br><br><br><br>Adv. Pro. No. 14-50437-CSS<br><br><br><br><br><br><br><br>April 21, 2016 |

## REPLY BRIEF OF THE QUAPAW CASINO AUTHORITY IN SUPPORT OF ITS MOTION TO DISMISS TRUSTEE'S COUNTERCLAIM

Daniel E. Gomez, Okla. Bar No. 22153*  
CONNER & WINTERS, LLP  
4000 One Williams Center  
Tulsa, Oklahoma 74172-0148  
Telephone: (918) 586-8984  
*Admitted Pro Hac Vice*  

Ricardo Palacio, Del. Bar No. 3765  
ASHBY & GEDDES, P.A.  
500 Delaware Avenue  
P.O. Box 1150  
Wilmington, Delaware 19899  
Telephone: (302) 654-1888  

*Attorneys for the Quapaw Casino Authority of the Quapaw Tribe of Oklahoma*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Money Centers of America, Inc. (9364) and Check Holdings, LLC (3671). The location of the Debtors' corporate headquarters and their service address is 601 S. Henderson Rd., Suite 153, King of Prussia, Pennsylvania 19406.

{01108356;v1 }

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION & SUMMARY ............................................................................................1

ARGUMENT & AUTHORITIES .............................................................................................2

I.  TRIBAL SOVEREIGN IMMUNITY IS A JURISDICTIONAL BAR
    AND THE TRUSTEE'S COUNTERCLAIM SHOULD THEREFORE BE
    DISMISSED UNDER FED. R. CIV. P. 12(b)(1) .............................................................2

II. TRIBAL SOVEREIGN IMMUNITY IS UNIQUE AND IS NOT
    WAIVED BY SECTION 106(a) OF THE BANKRUPTCY CODE ................................7

III. QCA DID NOT WAIVE ITS IMMUNITY BY FILING A PROOF OF
     CLAIM OR INITIATING THIS ADVERSARY PROCEEDING..................................10

CONCLUSION ........................................................................................................................13

CERTIFICATE OF SERVICE ................................................................................................ vi

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17 (1st Cir. 2001) ................................................................................................12

*Alabama v. PCI Gaming Auth.*, 801 F.3d 1278 (11th Cir. 2009) .......................................3

*Allen v. Gold Country Casino*, 464 F.3d 1044 (9th Cir. 2006).......................................5, 6

*Berrey v. Asarco*, 439 F.3d 636 (10th Cir. 2006) ........................................................10, 11

*Breakthrough Management Group, Inc. v. Chukchanski Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010) ............................................................................4. 5, 6

*Brown v. United States*, 151 F.3d 800 (8th Cir.1998)..........................................................3

*Buchwald Capital Advisors, LLC v. Papas (In re Greektown Holdings, LLC)*, 532 B.R. 680 (E.D. Mich. 2015).................................................................................7, 9, 10

*Bull v. United States*, 295 U.S. 247, 55 S. Ct. 695 (1935) .................................................11

*C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 121 S. Ct. 1589 (2001)..................................................................................................8

*Cherokee Nation v. Georgia*, 30 U.S. 1 (1831) ...................................................................8

*CNA v. United States*, 535 F.3d 132 (3d Cir. 2008)............................................................4

*County of Oneida, N.Y. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 105 S. Ct. 1245 (1985)........................................................................................................9

*County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 112 S. Ct. 683 (1992)............................................................................9

*Confederated Tribes of the Colville Reservation Tribal Credit v. White (In re White)*, 139 F.3d 1268 (9th Cir. 1998).........................................................................12

*Dry v. United States*, 235 F.3d 1249 (10th Cir. 2000) ........................................................4

*FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996 (1994) .........................................................2

*Federal Aviation Administration v. Cooper*, 132 S. Ct. 1441 (2012)..................................9

*Fidelity & Casualty Co. v. Reserve Insurance Co.*, 596 F.2d 914 (9th Cir. 1979) ...........11

*Garcia v. Akwesasne Housing Authority*, 268 F.3d 76 (2d Cir. 2001) ...............................3

*Gardner v. New Jersey*, 329 U.S. 565, 67 S. Ct. 467 (1947)..............................................12

*Guaranty Trust Co. v. United States*, 304 U.S. 126, 58 S. Ct. 785 (1938) ........................10

*Harris v. Kellogg Brown & Root Services, Inc.*, 724 F.3d 458 (3d Cir. 2013)................4, 5

*Hagen v. Sisseton-Wahpeton Community College*, 205 F.3d 1040 (8th Cir. 2000) ............3

*In re Anes*, 195 F.3d 177 (3d Cir. 1999) ............................................................................11

*In re Greenstreet, Inc.*, 209 F.2d 660 (7th Cir. 1954) ........................................................11

*International Fin. Corp. v. Kaiser Group International, Inc. (In re Kaiser)*, 399 F.3d 558(3d Cir. 2005)..............................................................................................11

*In re Whitaker*, 474 B.R. 687 (B.A.P. 8th Cir. 2012) ...........................................7, 8, 9, 10

*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir. 1982)...................................11

*Jones v. Yorke (In re Friendship Medical Center, LTD)*, 710 F.2d 1297 (7th Cir. 1983) ................................................................................................................12

*Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S. Ct. 1700 (1998)..................................................................................................6

*Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2003) ...........................7, 9

*Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F. 3d 917 (6th Cir. 2009) .............................................................................................................3

*Michigan v. Bay Mills Indian Community*, 572 U.S. ___, 134 S. Ct. 2024 (2014)..................................................................................................................8

*Miner Electric, Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007 (10th Cir. 2007)............3

*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 119 S. Ct. 1187 (1999)..............................................................................................................9

*Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 105 S. Ct. 2399 (1985)...................9

*Native American Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288 (10th Cir. 2008).........................................................................................................6

*Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Authority*, 207 F.3d 21 (1st Cir. 2000) .................................................................3, 6

*Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 111 S. Ct. 905 (1991) ...................................................... 8, 10

*Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015) ................................................... 3

*Ramey Constr. Co., Inc. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315 (10th Cir. 1982) ................................................................................................. 2

*Rupp v. Omaha Indian Tribe*, 45 F.3d 1241 (8th Cir.1995) ................................. 3

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S. Ct. 1670 (1978) ................. 8

*United States v. Ringgold*, 33 U.S. (8 Pet.) 150 (1934) ...................................... 11

*United States v. Martin*, 267 F.2d 764 (10th Cir. 1959) ...................................... 10

*United States v. Mitchell*, 463 U.S. 206, 103 S. Ct. 2961 (1983) ........................ 2

*United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 60 S. Ct. 653 (1940) ............................................................................................. 3, 10

*University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065 (3d Cir. 1992) ....................................................................................... 2

## Constitutional Provisions, Statutes, Regulations & Rules

11 U.S.C. § 106(a) ................................................................................................ 1

11 U.S.C. § 106(b) ................................................................................................ 10

11 U.S.C. § 101(27) .............................................................................................. 9

25 U.S.C. § 2701 .................................................................................................. 2

Fed. R. Civ. P. 12(b)(1) ................................................................................ 1, 2, 3, 4

## Other Authorities

16 *Moore's Federal Practice* § 105.21 (3d ed.) .................................................. 2

*Cohen's Handbook of Federal Indian Law* § 2.02 (2012 ed.) ............................. 9

*Cohen's Handbook of Federal Indian Law* § 21.02[2] (2012 ed.) ....................... 5

**REPLY BRIEF OF THE QUAPAW CASINO AUTHORITY IN
SUPPORT OF ITS MOTION TO DISMISS TRUSTEE'S COUNTERCLAIM**

The Quapaw Casino Authority of the Quapaw Tribe of Oklahoma (O-Gah-Pah) ("QCA") d/b/a the Quapaw Casino ("Casino") hereby files this reply brief in support of its motion to dismiss the trustee's counterclaim (Docs. 65 & 66) and in response to the trustee's objections to the motion (Doc. 67).

**INTRODUCTION & SUMMARY**

The trustee has made no valid argument to overcome QCA's sovereign immunity or to avoid dismissal of the counterclaim pursuant to Fed. R. Civ. P. 12(b)(1). The circuit courts of appeals are in agreement that tribal sovereign immunity is jurisdictional and does not require a trial. The relevant body of law also establishes that QCA is immune as a matter of law because it owns and operates a gaming enterprise pursuant to the Indian Gaming Regulatory Act and its revenues therefore are required to be used for governmental purposes. QCA's motion was properly brought under Rule 12(b)(1).

With respect to the immunity waiver expressed at 11 U.S.C. § 106(a), it does not apply to Indian tribes. The case relied upon by the trustee has drawn strong criticism and has not been followed in the most recent cases. Courts following the better-reasoned view have held that Congressional waivers of tribal sovereign immunity must be expressly stated, but § 106(a) does not include such an express waiver for Indian tribes. The trustee further is incorrect that it can pursue a counterclaim that far exceeds the amount of QCA's claim. Because of its sovereign immunity, the trustee's counterclaim is limited to recoupment which by definition cannot exceed the original claim. The trustee's arguments to the contrary do not withstand scrutiny when viewed properly in context.

QCA's motion to dismiss should therefore be granted pursuant to Rule 12(b)(1) and for the other reasons discussed in QCA's opening brief.

**ARGUMENT AND AUTHORITIES**

**I. TRIBAL SOVEREIGN IMMUNITY IS A JURISDICTIONAL BAR AND THE TRUSTEE'S COUNTERCLAIM SHOULD THEREFORE BE DISMISSED UNDER FED. R. CIV. P. 12(b)(1)**

The trustee incorrectly argues that sovereign immunity is not jurisdictional, but is an "affirmative defense" that cannot be disposed of through a motion to dismiss. This assertion is contrary to volumes of black letter law that sovereign immunity is a jurisdictional bar which is properly raised through a motion to dismiss under Fed. R. Civ. P. 12(b)(1). This is especially true in this case where QCA is asserting immunity as a subdivision of the tribal government that operates a gaming enterprise. Because QCA undisputedly conducts gaming pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, et. seq., its revenues can be used only to fund governmental programs. QCA is a governmental arm of a federally recognized Indian nation and therefore, as a matter of law, is immune from the trustee's counterclaim.

It is black letter law that "[s]overeign immunity is not merely a defense to an action . . . but a jurisdictional bar[.]" 16 *Moore's Federal Practice* § 105.21 (3d ed.) (citing *United States v. Mitchell*, 463 U.S. 206, 215, 103 S. Ct. 2961, 2967 (1983); *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994)); *see also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1085 (3d Cir. 1992) (holding that "a waiver of sovereign immunity is a prerequisite for jurisdiction.") The same is true of tribal sovereign immunity because "[t]ribal sovereign immunity is deemed to be coextensive with the sovereign immunity of the United States." *Ramey Constr. Co., Inc.*

*v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 319-20 (10th Cir. 1982) (citing *United States v. United States Fid. & Guar. Co.*, 309 U.S. 506, 514, 60 S. Ct. 653, 657 (1940)).

Important to this case is that all seven circuits before which the matter has arisen agree that sovereign immunity is properly challenged under Fed. R. Civ. P. 12(b)(1), and does not require a trial as the trustee argues. The Tenth Circuit has unequivocally held that "[t]ribal sovereign immunity is a matter of subject matter jurisdiction, which may be challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(1)." *Miner Electric, Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007). The Eighth Circuit similarly has held that "[s]overeign immunity is a jurisdictional question" and that it is properly addressed under Rule 12(b)(1). *Hagen v. Sisseton-Wahpeton Community College*, 205 F.3d 1040, 1043 (8th Cir. 2000) (citing *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir.1995); *Brown v. United States*, 151 F.3d 800, 804 (8th Cir.1998)); *See also Pistor v. Garcia*, 791 F.3d 1104, 1110-11 (9th Cir. 2015) (holding that "Rule 12(b)(1) is . . . a proper vehicle for invoking sovereign immunity from suit.").

In addition to the Eighth, Ninth, and Tenth Circuit cases cited above, the First, Second, Sixth, and Eleventh Circuits have also properly analyzed tribal sovereign immunity as a jurisdictional defense under Fed. R. Civ. P. 12(b)(1). *See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 35 (1st Cir. 2000); *Garcia v. Akwesasne Housing Auth.*, 268 F.3d 76, 78 (2d Cir. 2001); *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009); *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1286 (11th Cir. 2009). Thus, the courts of appeals are in agreement that tribal sovereign immunity is properly asserted and determined as a

matter of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The trustee's argument ignores these established precedents.

Where, as here, a motion brought under Rule 12(b)(1) challenges the factual basis underlying a plaintiff's assertion of subject matter jurisdiction, as opposed to a facial challenge to the substantive allegations in a plaintiff's pleading, "the burden of proving that jurisdiction exists lies with the plaintiff."[2] *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013). Further, on factual challenges, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. Finally, where the jurisdictional issues are unrelated to the merits of the claim, consideration and determination of the jurisdictional facts are proper at the motion to dismiss stage and does not require a trial. *See CNA v. United States*, 535 F.3d 132, 139-40 (3d Cir. 2008); *see also Dry v. United States*, 235 F.3d 1249, 1252-53 (10th Cir. 2000) (applying foregoing rules to tribal sovereign immunity).

The trustee "does not dispute that the [Quapaw] *Tribe* qualifies for sovereign immunity" but questions whether QCA, as subdivision of the Tribe, shares in that immunity. (Doc. 67, at 5.) The trustee then argues that a six-prong fact analysis is necessary to make that determination, and that these fact issues require a trial. However, the very case the trustee cites for this proposition in fact analyzed the issue as part of a motion to dismiss under Rule 12(b)(1). *See Breakthrough Mgmt. Grp., Inc. v. Chukchanski Gold Casino & Resort*, 629 F.3d 1173, 1188 (10th Cir. 2010). The court received evidence limited to the jurisdictional issue of whether a tribal gaming enterprise was entitled to the tribe's sovereign immunity and held that the trial court improperly had

---

[2] The trustee is the "plaintiff" for purposes of the analysis because it is the party asserting the counterclaim.

refused to dismiss. *See id*. The trustee cannot validly argue that a trial is necessary when its own cited case is to the contrary.[3]

Fortunately, a detailed fact inquiry is not necessary here because QCA is entitled to tribal sovereign immunity as a matter of law. The trustee cites the Tenth Circuit's test for whether tribal sovereign immunity extends to a governmental subdivision which includes the following relevant considerations: "(1) their method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough Mgmt. Grp.*, 629 F.3d at 1187.

It is undisputed that QCA is a subdivision of the Quapaw Tribe and that it wholly owns and operates the Quapaw Casino, a tribal gaming enterprise. A leading Indian law treatise explains that "[b]ecause an Indian gaming facility operated under the Indian Gaming Regulatory Act is required by that Act to be wholly owned by the tribal government and to serve tribal governmental purposes, it functions as an arm of the tribal government and therefore enjoys the tribe's sovereign immunity." *Cohen's Handbook of Federal Indian Law* § 21.02[2], at 1328 (2012 ed.) (hereinafter *Cohen's Handbook*) (citing *Allen v. Gold Country Casino*, 464 F.3d 1044, 1146-47 (9th Cir. 2006)). As more fully described in *Allen*:

---

[3] The trustee's baseless insistence that the matter not be addressed through Rule 12(b)(1) is a clear attempt to shift its burden in establishing subject matter jurisdiction. *See Harris*, 724 F.3d 458, 464 (3d Cir. 2013) (holding that "the burden of proving that jurisdiction exists lies with the plaintiff.").

{01108356;v1 } 5

> "The IGRA provides for the creation and operation of Indian casinos to promote 'tribal economic development, self-sufficiency, and strong tribal governments.' 25 U.S.C. § 2702(1). One of the principal purposes of the IGRA is 'to insure that the Indian tribe is the primary beneficiary of the gaming operation.' *Id.,* § 2702(2). . . . With the Tribe owning and operating the Casino, there is no question that these economic and other advantages inure to the benefit of the Tribe. Immunity of the Casino directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general. In light of the purposes for which the Tribe founded this Casino and the Tribe's ownership and control of its operations, there can be little doubt that the Casino functions as an arm of the Tribe. It accordingly enjoys the Tribe's immunity from suit."

464 F.3d at 1146-47 (internal citations omitted).

In *Breakthrough Management*, the court relied extensively on *Allen* in determining that a tribal gaming enterprise is entitled to the same immunity as the tribe itself. The nature of tribal gaming as providing revenues for use by the tribal government—as strictly required by the IGRA—is sufficient to fulfill all six prongs of the analysis. The law in this area has developed such that governmental arms and subdivisions are routinely held to be subject to sovereign immunity as a matter of law. *See, inter alia, Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754, 118 S. Ct. 1700, 1702 (1998) (holding that tribal economic activities are entitled to sovereign immunity); *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1292 (10th Cir. 2008) (holding that "[t]ribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities."); *Ninigret Development Corp.*, 207 F.3d at 29 (holding that "[t]he Authority, as an arm of the Tribe, enjoys the full extent of the Tribe's sovereign immunity.")

While this alone establishes that QCA is immune as a matter of law, QCA's charter further establishes—unequivocally— that QCA is entitled to the same immunity as the Quapaw Tribe. (Ex. A, Doc. 69-1.) QCA was created by an act of the Tribal

Business Committee to be a "governmental subdivision" of the Tribe. The Charter further expressly states at § 8(B) that "[t]he QCA shall be entitled to all of the privileges and immunities of the Tribe, including without limitation, sovereign immunity from suit." (Doc. 69-1, at 15.) The Tribal Business Committee is the Tribe's governing body. It is authorized "to speak and act on behalf of the Quapaw Tribe." (Doc. 69-1, at 1.) The tribal government, therefore, properly extended its own immunity to QCA.

Thus, there can be no question that QCA enjoys sovereign immunity and that the court is authorized to dismiss the matter under Rule 12(b)(1). The trustee's request for a trial on the issue of sovereign immunity is not supportable.

## II. TRIBAL SOVEREIGN IMMUNITY IS UNIQUE AND IS NOT WAIVED BY SECTION 106(a) OF THE BANKRUPTCY CODE

The most recent cases to address the sovereign immunity waiver set forth in 11 U.S.C. § 106(a) have held that Indian tribes are not subject to claims in bankruptcy courts. *See Buchwald Capital Advisors, LLC v. Papas (In re Greektown Holdings, LLC)*, 532 B.R. 680 (E.D. Mich. 2015) (hereinafter *Greektown*); *In re Whitaker*, 474 B.R. 687 (B.A.P. 8th Cir. 2012). These courts did not reach their conclusions lightly. They acknowledged that the court in *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2003) held to the contrary but could not agree with that court's reasoning. The trustee's argument is based on errors in the *Krystal Energy* analysis. This court should instead adopt the proper reasoning expressed in *Greektown*.

The trustee makes no argument that was not fully addressed and rejected by the court in *Greektown* and *Whitaker*. The trustee first argues that Congress need not use the "magic words" "Indian tribe" to abrogate tribal sovereign immunity. However, in *Greektown*, the court aptly noted that "there is not one example in all of history where the

Supreme Court has found that Congress intended to abrogate tribal sovereign immunity *without* expressly mentioning Indian tribes somewhere in the statute." 532 B.R. at 693 (emphases in original). This reasoning is faithful to the Supreme Court's mandate that waivers of immunity cannot be implied but must be clearly and unequivocally expressed. *See Michigan v. Bay Mills Indian Community*, 572 U.S. ___, 134 S. Ct. 2024, 2031 (2014) (citing *C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 418, 121 S. Ct. 1589, 1594 (2001) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S. Ct. 1670 (1978)); *see also Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509, 111 S. Ct. 905, 909 (1991).

The trustee further cites a key fallacy expressed in *Krystal Energy* that governments can only be "foreign or domestic" and that no government can exist outside of this dichotomy. The court in *Whitaker* refused to accept this overly simplistic argument—an argument that fails to do justice to the unique nature of tribal sovereignty. Quoting Chief Justice Marshall's opinion in *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831), the *Whitaker* court held that

> "while the tribe had a treaty with the United States, as a foreign government might, their lands were within the boundaries of the United States, so they were not a foreign state. But unlike, say Georgia, the tribe was not a domestic state either. Instead, Chief Justice Marshall for the Court held that 'the relation of the Indians to the United States is marked by peculiar and cardinal distinctions which exist nowhere else.' For support, he pointed out that the Commerce Clause empowers Congress to 'regulate commerce with foreign nations, and among the several states, and with the Indian tribes.' 'In this clause, they are as clearly contradistinguished by a name appropriate to themselves from foreign nations as from the several States composing the union.' After stating that the relationship of Indian tribes to the United States is somewhat akin to that of a guardian and ward, he determined that rather than being domestic states or foreign nations, they should be treated as 'domestic dependent nations.' Therefore, the Court in that case did not have jurisdiction over their suit. Chief Justice Marshall's conclusion, rather than supporting the trustees' position here, demonstrates that Indian tribes

are neither foreign nor domestic governments within the meaning of the Bankruptcy Code definition of 'governmental unit.' "

474 B.R. at 693-94 (internal citations omitted).

Another important deficiency in the *Krystal Energy* decision is its failure to recognize or even mention the Indian canons of construction. The canons resolve any doubt that *Greektown* and *Whitaker* are correct. The Indian cannons of construction are "rooted in the unique trust relationship between the United States and the Indians," and provide that statutes are to be "construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit."[4] The *Greektown* court recognized that pursuant to these canons "the Tribe throughout retains 'a thumb on the interpretive scale tending to tip the balance in their favor in the event of an ambiguity or lack of clarity.' "[5] The *Krystal Energy* decision fails to mention the canons and instead relies on strained reasoning to reach its conclusion without regard to the ambiguity created when Congress did not expressly mention Indian tribes in § 101(27).

---

[4] *See Cnty. of Oneida, N.Y. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 247, 105 S. Ct. 1245, 1258 (1985); *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 218, 119 S. Ct. 1187, 1211 (1999) (applying Indian cannons); *Cnty. of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 269, 112 S. Ct. 683, 693 (1992) (same); *see also Cohen's Handbook* § 2.02, at 113 (discussing Indian canons).

[5] Citing *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S. Ct. 2399, 2403 (1985) ("statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit"); *Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 1448, (2012) ("Legislative history cannot supply a waiver that is not clearly evident from the language of the statute. Any ambiguities in the statutory language are to be construed in favor of immunity, so that the [Tribe's] consent to be sued is never enlarged beyond what a fair reading of the text requires. Ambiguity exists if there is a plausible interpretation of the statute that would not authorize" suit against the Tribe).

The decisions in *Greektown* and *Whitaker* apply the correct reasoning which should be adopted by this court. Tribal sovereign immunity is not waived by the bankruptcy code and QCA is entitled to its benefits in this adversary proceeding.

### III. QCA DID NOT WAIVE ITS IMMUNITY BY FILING A PROOF OF CLAIM OR INITIATING THIS ADVERSARY PROCEEDING

The trustee is incorrect that, by filing a proof of claim, QCA effected a blanket waiver of sovereign immunity that applies to the trustee's counterclaim. The trustee cites a number of cases in support of its argument, but the cases invariably rely on 11 U.S.C. § 106(b), which states that "[a] governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose." As established above, these cases are inapplicable because the bankruptcy code's definition of "governmental unit" does not expressly mention or encompass Indian tribes. Thus, any waiver based on QCA's filing of a proof of claim or its adversary complaint must rely on some other basis for establishing a waiver of sovereign immunity.

As discussed in QCA's opening brief, the Supreme Court has held that "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." *Okla. Tax Comm'n*, 498 U.S. at 509, 111 S. Ct. at 909 (*citing United States Fid. & Guar. Co.*, 309 U.S. at 511-12, 60 S. Ct. at 655-56)). The only exception is for equitable defenses sounding in recoupment.[6] *See Berrey v. Asarco*, 439 F.3d 636, 642-43

---

[6] The *Andrus* court additionally cites *Guaranty Trust Co. v. United States*, 304 U.S. 126, 134, 58 S. Ct. 785 (1938); *United States v. Martin*, 267 F.2d 764, 769

(10th Cir. 2006); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1345 (10th Cir. 1982). Counterclaims in recoupment "arise out of the same transaction or occurrence, seek the same kind of relief as the plaintiff, and do not seek an amount in excess of that sought by the plaintiff." *Id*. Since the bankruptcy code's blanket waiver does not apply to Indian tribes, these non-bankruptcy cases determine the limited scope of the immunity waiver that exists when a sovereign Indian tribe initiates suit—in this case, an adversary proceeding.

The limitation of permissible counterclaims to those sounding in recoupment is important because the standard for asserting the counterclaim is much more stringent. Under § 106(b), a compulsory counterclaim involving "the same transaction or occurrence" is more liberal and is analyzed under the "logical relationship" test. *See Int'l Fin. Corp. v. Kaiser Grp. Int'l, Inc. (In re Kaiser)*, 399 F.3d 558, 567 (3d Cir. 2005). However, "the doctrine of recoupment must be narrowly construed in the bankruptcy context" and "a mere logical relationship is not enough." *In re Anes*, 195 F.3d 177, 182 (3d Cir. 1999). And important to this case is that the counterclaim cannot "seek an amount in excess of that sought by the plaintiff." *Berrey*, 439 F.3d 636, 643. Thus, since § 106(b) does not apply, the trustee's counterclaim is only permissible if it sounds in recoupment, which it does not. The counterclaim far exceeds that of QCA's claim and is based on separate payments and legal theories. The counterclaim is therefore barred entirely or, at a minimum, is limited to the amount of QCA's claim asserted in its intervenor complaint.

---

(10th Cir. 1959); *Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 917 n.1 (9th Cir. 1979); *In re Greenstreet, Inc.*, 209 F.2d 660, 663 (7th Cir. 1954); *Bull v. United States*, 295 U.S. 247, 261-62, 55 S. Ct. 695 (1935); *United States v. Ringgold*, 33 U.S. (8 Pet.) 150, 163-64 (1934).

Even if the more liberal test for compulsory counterclaims were applicable here, case law supports the proposition that the sovereign does not waive its immunity for affirmative relief against its treasury merely by filing a proof of claim. *See Jones v. Yorke (In re Friendship Med. Ctr., LTD)*, 710 F.2d 1297, 1300-01 (7th Cir. 1983). In *Jones*, the court specifically held that by filing a proof of claim, the waiver of sovereign immunity "does not extend to . . . claims for affirmative relief in excess of or different in kind from that sought by the plaintiff." *Id*. This is consistent with the general rule that by filing a proof of claim, a tribe waives immunity only with respect to an adjudication of the claim and to the extent it will be bound by a discharge.[7] *See Confederated Tribes of the Colville Reservation Tribal Credit v. White (In re White)*, 139 F.3d 1268, 1271 (9th Cir. 1998) (citing *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S. Ct. 467, 471 (1947)).

The trustee's counterclaim is therefore barred by QCA's sovereign immunity. It is barred primarily because § 106(b) is inapplicable, and the standard therefore is that the counterclaim must sound in recoupment, which it does not. The counterclaim is not for an "adjudication of the claim" but seeks recovery of alleged preferences in an amount that doubles QCA's intervenor claim. This type of claim does not fit within the types of counterclaims that are within the narrow waiver of sovereign immunity that exists when an Indian tribe files a proof of claim or initiates an adversary proceeding. Even if the

---

[7] The trustee cites only one case where a counterclaim for affirmative relief in excess of the sovereign's claim was allowed. *See Arecibo Comty. Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 28-29 (1st Cir. 2001). The court noted that several other courts of appeals had recognized the general rule that when a sovereign files a proof of claim it waives immunity, but that none had ever held that the waiver extended to affirmative relief in excess of the proof of claim amount. *Id*. at 28 n.15. The court acknowledged that the Seventh Circuit in *Jones* had held that the waiver did not extend that far, but went on to rule that affirmative relief in excess of the claim was allowable in the case before the court. The case should be considered an outlier and the rule set forth in *Jones* should be applied here.

more liberal standard for compulsory counterclaims applied, the counterclaim should not be allowed to the extent it requests sums that far exceed the amount of QCA's claim.

## CONCLUSION

The trustee has made no argument that overcome QCA's tribal sovereign immunity. The trustee's counterclaim should therefore be dismissed.

Dated: April 21, 2016                                   Respectfully submitted,

/s/ Benjamin W. Keenan
Ricardo Palacio (No. 3765)
Benjamin W. Keenan (No. 4724)
ASHBY & GEDDES, P.A.
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
RPalacio@ashby-geddes.com

-and-

Daniel E. Gomez, Okla. Bar No. 22153*
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, Oklahoma  74172-0148
Telephone: (918) 586-8984
Facsimile:  (918) 586-8311

*Admitted Pro Hac Vice*

*Attorneys for the Quapaw Casino Authority of the Quapaw       Tribe of Oklahoma (O-Gah-Pah)*